**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re* | Chapter 11 |
| FOOD MANAGEMENT GROUP, LLC, *et al.* | Case No. 04-22880 (ASH) |
| | (Jointly Administered) |

| | |
|---|---|
| MATRIX REALTY GROUP, INC., | |
| Appellant, | |
| v. | Civil Case: 08-cv-04514-WHP |
| JANICE B. GRUBIN, in her capacity as Chapter 11 Trustee for Debtors FOOD MANAGEMENT GROUP, LLC, KMA I, INC., KMA II, INC., KMA III, INC., and BRONX DONUT BAKERY, INC., ROBERT L. RATTET, JONATHAN S. PASTERNAK, RATTET PASTERNAK & GORDON-OLIVER LLP, | On Appeal from the United States Bankruptcy Court for the Southern District of New York, Case No. 07-A-08221-MG |
| Appellees. | |

---

**BRIEF OF APPELLEE JANICE B. GRUBIN, CHAPTER 11 TRUSTEE, IN SUPPORT OF DENIAL OF APPEAL BY MATRIX REALTY GROUP, INC.**

---

**DRINKER BIDDLE & REATH LLP**
Warren von Credo Baker (WB 1100)
David S. Almeida (DA 8341)
191 North Wacker Drive, Suite 3700
Chicago, Illinois  60606-1698
Tel: 312-569-1000
Fax: 312-569-3000

*Counsel to Appellee Janice B. Grubin, as Chapter 11 Trustee*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

COUNTERSTATEMENT OF ISSUE PRESENTED ON APPEAL ......................................... 3

STANDARD OF APPELLATE REVIEW ............................................................................... 3

OBJECTION AND MOTION TO STRIKE MATRIX' BRIEF .............................................. 4

SUMMARY OF FACTS ......................................................................................................... 5

A.    THE BANKRUPTCY CASES ................................................................................. 5

B.    THE MATRIX ADVERSARY PROCEEDING ....................................................... 5

C.    THE 64 EAST ADVERSARY PROCEEDING ....................................................... 7

ARGUMENT ........................................................................................................................... 9

I.    JUDGE GLENN DID NOT ABUSE HIS DISCRETION IN RULING THAT
      MATRIX WAS NOT ENTITLED TO INTERVENE AS OF RIGHT........................ 9

      A.    MATRIX' MOTION TO INTERVENE IS MOOT. ....................................... 9

      B.    MATRIX' PROPOSED INTERVENTION IS A BLATANT ATTEMPT TO
            RELITIGATE THE MATRIX ADVERSARY PROCEEDING........................ 10

      C.    MATRIX WAIVED ANY ARGUMENT THAT IT WAS ENTITLED TO
            INTERVENTION OF RIGHT PURSUANT TO RULE 24(A)(1)................... 12

      D.    MATRIX IS NOT A "PARTY IN INTEREST" WITHIN THE MEANING OF §
            1109(B)........................................................................................................... 13

      E.    THE BANKRUPTCY COURT DID NOT ABUSE ITS DISCRETION IN HOLDING
            THAT MATRIX' MOTION TO INTERVENE WAS UNTIMELY................... 15

            1.    Matrix Delayed Seeking Intervention for More Than Thirteen
                  Months ............................................................................................ 16

            2.    Matrix' Delayed Intervention Will Prejudice the Existing Parties .......... 18

            3.    Matrix Will Suffer No Prejudice If Intervention Is Denied.................... 19

            4.    The Only Unusual Circumstances Militate Against Finding the
                  Application Timely .......................................................................... 20

      F.    MATRIX HAS NOT SATISFIED ANY OF THE REMAINING RULE 24(A)(2)
            FACTORS. ..................................................................................................... 20

II.   JUDGE GLENN DID NOT ABUSE HIS CONSIDERABLE DISCRETION
      IN DENYING PERMISSIVE INTERVENTION...................................................... 22

CONCLUSION ...................................................................................................................... 23

# TABLE OF AUTHORITIES

## Cases

*Aref v. United States*, 452 F.3d 202 (2d Cir. 2006) ........................................................ 9

*BBS Norwalk One, Inc. v. Raccolta, Inc.*, 117 F.3d 674 (2d Cir. 1997) ................................. 12, 22

*Bernheim v. Damon & Morey LLP*, Nos. 06-3386-BK, 06-3389-BK (CON), 2007
    WL 1858292 (2d Cir. (N.Y.) June 28, 2007) .................................................... 17, 22

*Buena Vista TV v. Adelphia Comm. Corp. (In re Adelphia Comm. Corp.)*,
    307 B.R. 404 (Bankr. S.D.N.Y. 2004) ...................................................... 11

*Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171 (2d Cir. 2001) .................................. 17

*Catanzano v. Wing*, 103 F.3d 223 (2d Cir. 1996) ...................................................... 16

*Donaldson v. United States*, 400 U.S. 517 (1971) ...................................................... 21

*Duttle v. Bandler & Kass*, 147 F.R.D. 69 (S.D.N.Y. 1993) ............................................... 17

*E\*Trade Fin. Corp. v. MarketXT Holdings Corp. (In re MarketXT Holding Corp.)*
    336 B.R. 67 (Bankr. S.D.N.Y. 2006) ........................................................ 14

*Farmland Dairies v. Comm'r of N.Y. State Dep't of Agriculture & Markets*,
    847 F.2d 1038 (2d Cir. 1988) .............................................................. 16, 19

*Greenidge v. Allstate Ins. Co.*, 82 Fed. Appx. 728  2003 WL 22955865
    (2d Cir. (N.Y.) Dec. 11, 2003) ............................................................ 3

*In re Bank of New York Derivative Litig.*, 320 F.3d 291 (2d Cir. 2003) ................................. 17, 20

*In re BDC 56 LLC*, 330 F.3d 111 (2d Cir. 2003) ...................................................... 23

*In re E.S. Bankest, L.C.*, 321 B.R. 590 (Bankr. S.D. Fla. 2005) ....................................... 14

*In re FBN Food Servs., Inc.*, No. 93 C 6347, 1995 WL 230958
    (N.D. Ill. Apr. 17, 1995) .................................................................. 14

*In re Food Management Group, LLC, et al.*, 372 B.R. 171 (Bankr. S.D.N.Y. 2007) ........... *passim*

*In re Holocaust Victim Assets Litig.*, 225 F.3d 191 (2d Cir. 2000) ..................................... 19

*In re Ionosphere Clubs, Inc.*, 101 B.R. 844 (Bankr. S.D.N.Y. 1989) .................................... 13, 19

*In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465 (S.D.N.Y. 1998) ..................... 19

*In re Stephenson*, Nos. 96 Civ. B. 557, 96 Civ. 558, 1996 WL 403087
    (S.D.N.Y. July 18, 1996) .................................................................. 4

*In re Stotler & Co.*, 166 B.R. 114 (N.D. Ill. 1994) .......................................................... 4

*In re Sunbeam Corp.*, 287 B.R. 861 (S.D.N.Y. 2003) ............................................. 10, 21

*Iridium India Telecom Ltd. v. Motorola, Inc.*, 165 Fed. Appx. 878,
    2005 WL 3557254 (2d Cir. (N.Y.) Dec. 28, 2005).................................................... 14

*Kheel v. American S.S. Owners Mut. Protection & Indem. Ass'n*,
    45 F.R.D. 281 (S.D.N.Y. 1968) ............................................................................ 21

*Kunz v. New York State Comm'n on Judicial Misconduct*,
    155 Fed.Appx. 21, 2005 WL 2982156 (2d Cir. (N.Y.) Nov. 8, 2005) .............................. 10, 11

*Lucente v. Int'l Bus. Mach. Corp.*, 310 F.3d 243 (2d Cir. 2002).................................... 12

*MasterCard Int'l. Inc. v. Visa Int'l. Serv. Ass'n, Inc.*, 471 F.3d 377 (2d Cir. 2006) ................... 22

*NAACP v. New York*, 413 U.S. 345 (1973)........................................................... 16, 17

*Term Loan Holder Committee v. Ozer Group, L.L.C. (In re The Caldor Corp.)*,
    303 F.3d 161 (2d Cir. 2002) ................................................................................ 14

*Travellers Intern., A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570 (2d Cir. 1994) .................. 11

*United States  v. Yonkers Board of Educ.*, 801 F.2d 593 (2d Cir. 1986) ...................................... 11

*United States Postal Service v. Brennan*, 579 F.2d 188 (2d Cir. 1978)........................................ 22

*United States v. Pitney Bowes, Inc.*, 25 F.3d 66 (2d Cir. 1994)................................................ 4, 19

*United States v. State of New York*, 820 F.2d 554 (2d Cir. 1987)........................................... 15, 21

## **Statutes**

11 U.S.C. § 1109(b) ......................................................................................... 3, 12-15

## **Rules**

Federal Rule of Civil Procedure  8(c) .................................................................... 11

Federal Rule of Civil Procedure 24 ................................................................... *passim*

Federal Rule of Bankruptcy Procedure 8010................................................................ 4

Federal Rule of Bankruptcy Procedure 9019................................................................ 1

## PRELIMINARY STATEMENT

This appeal involves a belated and unjustifiable attempt by Matrix Realty Group, Inc. ("Matrix") to relitigate issues previously litigated and determined in other forums and to interfere in an adversary proceeding brought *in February 2007* by Janice B. Grubin, Chapter 11 Trustee (the "Trustee") of Food Management Group, LLC, KMA I, Inc., KMA II, Inc., KMA III, Inc. and Bronx Donut Bakery, Inc. (collectively, the "Debtors") against 16 individuals and entities to recover, *inter alia*, damages to the Debtors' estates resulting from an offer made by 64 East 126th Realty LLC ("64 East") to purchase all or substantially all the Debtors' assets (the "64 East Adversary Proceeding"). The Trustee has reached settlements with *all* 16 defendants, including the most recent settlement with defendants Robert L. Rattet, Jonathan S. Pasternak and Rattet, Pasternak and Gordon-Oliver LLP (collectively, the "Rattet Defendants"). The hearing on the Trustee's motion, pursuant to Federal Rule of Bankruptcy Procedure 9019, to approve the settlement with the Rattet Defendants (the "Approval Motion") has been noticed for July 22, 2008.[1] Matrix' belated attempt to intervene is a transparent attempt to interfere with the pending settlement and to thwart the resolution of the 64 East Adversary Proceeding in hopes of obtaining favorable treatment in its own adversary proceeding captioned *Food Management Group, LLC, et al. v. Matrix Realty Group, Inc.*, Case No. 05-A-08636 (the "Matrix Adversary Proceeding").[2] Regardless, as a result of the pending settlement with the Rattet Defendants, Matrix is attempting to intervene in a lawsuit that will, provided judicial approval of the settlement with the Rattet Defendants, no longer exist. As such, Matrix' Motion to Intervene, as well as this appeal, is moot.

---

[1]    The Trustee filed her Approval Motion on June 24, 2008 and objections are due on or before July 15, 2008.

[2]    The Matrix Adversary Proceeding, as well as the Debtors' Bankruptcy Cases (jointly administered under Case No. 04-22880), are pending before Judge Hardin. The 64 East Adversary Proceeding, Adv. Proc. No. 07-A-8221, is pending before Judge Glenn.

Moreover, Matrix' appeal of Judge Glenn's April 7, 2008 Order (the "Order") denying its Motion to Intervene is a desperate attempt to avoid the impact of the adverse rulings rendered in the Matrix Adversary Proceeding by Judge Hardin and to have a second bite at the proverbial apple in front of Judge Glenn.  By its appellate brief, Matrix asserts that intervention was warranted because the 64 East bid "had a direct impact on Matrix and the outcome of the adversary proceeding against [it] both as to liability and as to damages."  Notably, the precise issues which Matrix now seeks to inject into the 64 East Adversary Proceeding were repeatedly raised and routinely rejected by Judge Hardin in his July 25, 2007 Decision After Trial (the "Matrix Decision"), by which he ruled that Matrix was liable for breach of its contract to purchase the Debtors' assets for $26.7 million (the "Matrix Contract").  More recently, on May 28, 2008, Judge Hardin entered a Final Order on Liability and Damages ordering, among other things, that "Matrix is not entitled to any credit for the release of the bidding deposit tendered by 64 East [] in connection with 64 East's bid to purchase the Debtors' assets."  As a result of those findings, Judge Hardin, also on May 28, 2008, entered Final Judgment against Matrix in the amount of $9,196,114.11.  Having every opportunity to present its case before Judge Hardin, Matrix' transparent attempt to find a more sympathetic ear should not be countenanced. Additionally, Matrix' statement that intervention is warranted because it "has no other judicial recourse" rings especially hollow in that it is currently appealing the Matrix Decision and has identified 16 issues that it intends to appeal relative to Judge Hardin's rulings.

Matrix' attempt to overturn Judge Glenn's Order fails for many other reasons.  Further to the deferential standard by which the Order must be reviewed, Matrix must establish that Judge Glenn abused his discretion in denying the Motion to Intervene.  Matrix cannot make such a showing.  First, as for Matrix' argument that Judge Glenn improperly denied its request to

intervene as of right pursuant to Rule 24(a)(1), Matrix never made any such request for relief previously.  Since Matrix failed to raise such arguments below, it has waived any appellate grounds for such relief.  Second, as for Matrix' argument that it is entitled to intervene as of right under Rule 24(a)(2), while it did raise that issue before Judge Glenn, it did not preserve such issues on appeal.  Indeed, Matrix' Notice of Appeal states that it "appeals from so much of the Order that denied its motion to permissively intervene in the [64 East Adversary] proceeding." Third, Matrix, as a defendant in a separate adversary proceeding, is ***not*** a party in interest under 11 U.S.C. § 1109(b), and therefore it is not entitled to intervene in this adversary proceeding as of right.  Fourth, as Matrix waited ***more than 13 months*** after it had actual knowledge of the commencement of the 64 East Adversary Proceeding, Judge Glenn was within his discretion in determining that Matrix' request to intervene was untimely.  Fifth, while its Notice of Appeal provides that it is appealing the denial of its request for permissive intervention, Matrix fails to address those arguments in its appellate brief and thus has waived any request for permissive intervention pursuant to Rule 24(b).  Moreover, even if Matrix could argue permissive intervention, Judge Glenn's ruling was proper, and certainly not an abuse of his discretion.  The Order should be affirmed in its entirety.

### COUNTERSTATEMENT OF ISSUE PRESENTED ON APPEAL

Whether the Bankruptcy Court abused its discretion in denying Matrix' Motion to Intervene.

### STANDARD OF APPELLATE REVIEW

The Bankruptcy Court's decision to deny Matrix' Motion to Intervene is reviewed for abuse of discretion.  *See, e.g., Greenidge v. Allstate Ins. Co.*, 82 Fed. Appx. 728, 730, 2003 WL 22955865, at *1 (2d Cir. (N.Y.) Dec. 11, 2003) ("a district court's denial of a Motion to Intervene, whether as of right or by permission, is reviewed for abuse of discretion."); *United*

*States v. Pitney Bowes, Inc.*, 25 F.3d 66, 69 (2d Cir. 1994) (intervention decisions reviewed under an abuse of discretion standard "[b]ecause of the variety of factual circumstances that face a district court called upon to decide whether to grant or deny a motion to intervene, and the close proximity of that court to the case's nuances, it has the advantage of having a better 'sense' of the case than we do on appeal.").

### OBJECTION AND MOTION TO STRIKE MATRIX' BRIEF

Matrix' brief is rife with wholly unsupported assertions of fact and law in contravention of Bankruptcy Rules 8010(a)(1)(D) and 8010(a)(1)(E).  These rules provide that "[t]he brief of the appellant shall contain under appropriate headings and in the order here indicated . . . (D) a statement of the case [containing appropriate references to the record] and (E) an argument . . . with citations to the authorities, statutes and parts of the record relied on."  Matrix' failure to follow these mandatory rules warrants dismissal of its appeal.  *See, e.g.*, *In re Stephenson*, Nos. 96 Civ. B. 557, 96 Civ. 558, 1996 WL 403087, at *1 (S.D.N.Y. July 18, 1996) (noting that appellant's failure to comply with Bankruptcy Rule 8010 is grounds for dismissing a bankruptcy appeal); *In re Stotler & Co.*, 166 B.R. 114, 116-17 (N.D. Ill. 1994) (failure of an appellant's brief to comply with the Bankruptcy Rules alone justifies denial of that party's appeal).  The "Background Facts" contained within Matrix' brief is not only bereft of a single citation to the record on appeal, but it is also directly contradicted by that record.  Similarly, the "Argument" contained within Matrix' brief overwhelmingly lacks the requisite citations to the authorities, statutes, or parts of the record relied on, and, in many instances, is directly contradicted by those authorities.  For these reasons, the Trustee feels compelled to provide this Court with some background supported by appropriate citation.

<u>S<small>UMMARY OF</small> F<small>ACTS</small></u>

**A.    The Bankruptcy Cases**

On June 1 and June 2, 2004, the Debtors each filed voluntary petitions for relief pursuant

to Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States

Bankruptcy Court for the Southern District of New York.  Further to an Order entered on June 4,

2004, the Debtors' bankruptcy cases are being jointly administered under Case No. 04-22880

(ASH), and are styled *In re Food Management Group, LLC, et al*. (the "Bankruptcy Cases").

(Case No. 04-22880, D.I. #12.)  On September 2, 2005, Janice B. Grubin was appointed Chapter

11 Trustee for the Debtors.  (*Id.*, D.I. # 427.)

**B.    The Matrix Adversary Proceeding**

On July 21, 2005, prior to the Trustee's appointment, the Debtors commenced the Matrix

Adversary Proceeding alleging that Matrix breached the Matrix Contract to purchase the

Debtors' assets for $26.7 million.  (Adv. Pro. 05-A-08636, D.I. #1.)  On August 10, 2005, Matrix

filed an Answer denying any liability and asserting counterclaims (the "Matrix Answer").  (*Id.*,

D.I. #6.)  Notably, Matrix did not assert any third-party claims in the Matrix Answer, nor did it

ever file an amended answer or attempt to assert any third-party claims.

On June 16, 19, and 20, 2006, Judge Hardin presided over the trial of Matrix' liability for

breach of the Matrix Contract.  Following extensive post-trial briefing, Judge Hardin, on July 25,

2007, issued a Decision After Trial finding that the Trustee, on behalf of the Debtors' Estates,

was entitled to judgment against Matrix on the issue of liability for breach of the Matrix

Contract.  *See In re Food Management Group, LLC, et al.*, 372 B.R. 171 (Bankr. S.D.N.Y.

2007).  Relevant to the issues raised by the instant appeal, Judge Hardin, by the Matrix Decision,

specifically considered and rejected Matrix' argument that it was induced to increase its initial

bid to more than $26 million by 64 East's $21 million stalking horse bid as "bordering on the ridiculous." *Id.* at 208.

Following issuance of the Matrix Decision, the parties tendered numerous submissions regarding the very issues Matrix now attempts to relitigate in the 64 East Adversary Proceeding – including extensive argument regarding whether Matrix was entitled to a credit or offset for the Trustee's release of the 64 East Bid Deposit. During a January 17, 2008 hearing, Judge Hardin considered – and firmly rejected – Matrix' arguments in that regard:

> **THE COURT:  My ruling is that there should be no credit either in respect of the totality of the [64 East] deposit that was returned or the $350,000 that was recovered by the estate in the settlement with Borek, or any other monies that might relate in the future, to the 64 East bidding deposit matter.** *Nothing in relation to the 64 East bidding deposit has anything to do with the damages suffered by the debtor's estate as a consequence of Matrix' breach of its contract.  Nothing.  There is simply no causal relationship, there's no connection at all.*
>
> \* \* \* \* \*
>
> *The [64 East] matter has nothing to do with the damage claim of the debtor's estates in the [Matrix Adversary Proceeding].  It's just completely unrelated.  So there is no basis at all either theoretically or causally for holding any monies that the estate should have retained or did retain or derive relating to the 64 East bidding deposit.*

(Final Damages Hearing Tr., Adv. Pro. 05-A-08636, D.I. #111, at 57:1-10, 14-19 (emphasis added).)[3]

---

[3]    As set forth in Exhibit A hereto, on many occasions throughout the Matrix Adversary Proceeding, Matrix advanced numerous arguments that the circumstances surrounding the 64 East bid somehow relieved it of liability or served to mitigate any resultant damages. (*See* Ex. A.)  Those arguments were routinely rejected by Judge Hardin in the Matrix Adversary Proceeding.  By its Motion to Intervene, Matrix now seeks leave to relitigate those very same issues in the 64 East Adversary Proceeding.

On May 28, 2008, Judge Hardin entered a Final Order on Liability and Damages ordering, among other things, that "Matrix is not entitled to any credit for the release of the bidding deposit tendered by 64 East [] in connection with 64 East's bid to purchase the Debtors' assets." (*Id.*, D.I. #119.)  On the same day, Judge Hardin also entered Final Judgment Against Matrix in the amount of $9,196,114.11.  (*Id.*, D.I. #120.)  On June 5, 2008, Matrix filed its notice of appeal of the Final Order on Liability and Damages and the Final Judgment to the United States District Court for the Southern District of New York.  (*Id.*, D.I. #122.)

**C.**    **The 64 East Adversary Proceeding**

At a hearing conducted on March 15, 2006, Judge Hardin, made public a certain March 24, 2005 letter, which detailed the involvement of Tom and Gus Gianopoulos (collectively, the "Gianopoulos Brothers") in a bid by 64 East – unrelated to the Matrix Contract – to purchase the Debtors' assets (the "64 East Bid").  (*See* Motion to Approve Settlement with 64 East Defendants Tr., March 15, 2006, at 7-10.)  As noted by Judge Hardin during the March 15 hearing, the March 24, 2005 letter reflected an unlawful agreement whereby Nodine Realty Corp. (a Gianopoulos Brothers' entity) requested that 64 East "act as the Purchaser" in connection with the sale of the Debtors' assets.  (*Id.*)[4]

Judge Hardin's concerns about the integrity of the bankruptcy sale process led him to direct the Trustee to conduct an investigation into the facts and circumstances relating to the 64 East bid.  Upon the investigation's conclusion, the Trustee prepared an adversary complaint seeking to recover damages suffered by the Debtors as a result of events surrounding the 64 East Bid.  Thereafter, on February 13, 2007, the Trustee commenced the 64 East Adversary Proceeding by filing a multi-count complaint naming 16 defendants.  (07-A-08221-MG, D.I. #1.)

---

[4]    Mr. Avrum Rosen, counsel for Matrix, was present at the March 15, 2006 hearing.

On or about March 30, 2007, all defendants in the 64 East Adversary Proceeding, through their respective counsel, moved to dismiss (or joined in those motions).  (*Id.*, D.I. #11, 13, 14, 19, & 25.)

While the motions were pending, the Trustee, in July and August of 2007, reached settlements with all defendants other than the Rattet Defendants.[5]  In response to Judge Glenn's decision denying in part and granting in part the Rattet Defendants' motion to dismiss, (*id.*, D.I. #60), the Trustee, on February 12, 2008, filed an amended complaint (the "Amended Complaint").  (*Id.*, D.I. #63.)  On February 25, 2008, the Rattet Defendants filed their Answer to the Amended Complaint.  (*Id.*, D.I. #66.)

In addition to the motion practice occasioned by the numerous motions to dismiss, the Trustee and the Rattet Defendants have, more recently, litigated many other issues in the 64 East Adversary Proceeding, including: (i) determination of whether the 64 East Adversary Proceeding is a "core" or "non-core" proceeding, (*id.*, D.I. #72, 76, 85); (ii) the Trustee's Motion to Strike the Rattet Defendants' Affirmative Defenses Numbered 1-7, 10-12, 14, 16-20, 25, 26, 29, 30 and 32, and their Demand for a Trial by Jury, (*id.*, D.I. #74); and (iii) the motion to withdraw the reference filed by the Rattet Defendants on February 26, 2008 in the 64 East Adversary Proceeding, which resulted in the Bankruptcy Clerk opening, on February 28, 2008, Case No. 08-cv-02000-SCR, captioned *Janice B. Grubin, as Chapter 11 Trustee v. Robert L. Rattet, et al.*, in the United States District Court for the Southern District of New York.  (*Id.*, D.I. #67.)

While a number of these issues were pending, the Rattet Defendants and the Trustee, in March 2008, agreed to mediation in an attempt to settle the Trustee's claims.  As a result, the

---

[5]      On August 14 and 15, 2007, Matrix filed objections to the Trustee's settlements with both the Gianopoulos Defendants and the 64 East Defendants.  (Case No. 04-22880, D.I. #1064 & 1068.)  Judge Hardin overruled Matrix' objections and entered orders approving the Trustee's settlements with both the Gianopoulos and 64 East Defendants.

Trustee and the Rattet Defendants engaged in mediation sessions before James L. Garrity, Jr. on April 23 and 24, 2008 (the "Mediation Sessions"). On March 21, 2008, and only after it was denied participation in the Mediation Sessions, Matrix moved to intervene in the 64 East Adversary Proceeding. (*Id.*, D.I. #79.) On June 24, 2008, the Trustee and the Rattet Defendants entered into a settlement agreement resolving the 64 East Adversary Proceeding. (*See id.*, D.I. #105.) The Trustee's motion for approval of the proposed settlement with the Rattet Defendants is scheduled to be heard before both Judges Hardin and Glenn on July 22, 2008. (*Id.*)

<u>**ARGUMENT**</u>

## I.
## JUDGE GLENN DID NOT ABUSE HIS DISCRETION IN RULING THAT MATRIX WAS NOT ENTITLED TO INTERVENE AS OF RIGHT.

**A.    Matrix' Motion to Intervene Is Moot.**

Despite the fact that Matrix has been aware of the issues raised by the 64 East Adversary Proceeding since at least the Trustee's commencement of the adversary proceeding in February 2007,[6] Matrix waited until March 21, 2008 to request leave to intervene. Matrix' belated attempt to intervene is nothing more than a transparent attempt to vexatiously multiply the proceedings to make the litigation more costly for the Trustee and to provide it leverage in the completely unrelated Matrix Adversary Proceeding. However, as the Trustee has reached settlements with *all* 16 defendants, including the most recent settlement with the Rattet Defendants, Matrix' Motion to Intervene is moot. *See, e.g.*, *Aref v. United States*, 452 F.3d 202, 207 (2d Cir. 2006) (denying motion for intervention as moot where underlying litigation had been resolved); *In re Sunbeam Corp.*, 287 B.R. 861, 863 (S.D.N.Y. 2003) (denying intervention because proposed intervenor sought to intervene "in a dispute that no longer exists"); *Kunz v. New York State*

---

[6]    As noted above, Matrix was aware of potential improprieties with respect to the 64 East bid since March 15, 2006.

*Comm'n on Judicial Misconduct*, 155 Fed.Appx. 21, 22, 2005 WL 2982156, at *1 (2d Cir. (N.Y.) Nov. 8, 2005) (Motion to intervene was moot as underlying lawsuit was terminated).

**B.    Matrix' Proposed Intervention Is a Blatant Attempt to Relitigate the Matrix Adversary Proceeding.**

Matrix' belated attempt to intervene in the 64 East Adversary Proceeding is clearly the consequence of its tactical decision to relitigate its arguments advanced in the Matrix Adversary Proceeding and – having lost there – its transparent attempt to relitigate precisely those same arguments in the 64 East Adversary Proceeding.  By its appellate brief, Matrix asserts that the 64 East bid "had a direct impact on Matrix and the outcome of the adversary proceeding against [it] ***both as to liability and as to damages***."  (Matrix Br. at 9) (emphasis added.)  Matrix' arguments advanced in its Motion to Intervene have been litigated (and lost by Matrix) in the Matrix Adversary Proceeding in the course of the litany of pre- and post-trial submissions, as well as the trial itself.  (*See* Ex. A.)  Indeed, among the many other rulings by Judge Hardin, in his Final Order on Liability and Damages, was that "Matrix is not entitled to any credit for the release of the bidding deposit tendered by 64 East 126th Street LLC in connection with 64 East's bid to purchase the Debtors' assets."  (05-8636, D.I. #119.)

Now, by its Proposed Answer (filed with its Motion to Intervene), Matrix endeavors to intervene as a defendant and assert cross-claims against the Rattet Defendants and a nebulous "counterclaim" against the Trustee.  Specifically, for its proposed counterclaim against the Trustee, Matrix asserts that "to the extent that the [T]rustee recovers damages against the Rattet Defendants herein, based upon a finding of fraud against the Court, Matrix is entitled to a dollar for dollar credit to mitigate any damage award entered against it [in the Matrix Adversary Proceeding]."  (Proposed Answer, ¶ 210; *id.* ¶ 211 ("To the extent the Trustee recovers damages against the Rattet Defendants herein, based upon a judgment recovering the $2.1 million 64 East

deposit, Matrix is entitled to a dollar for dollar credit to mitigate any damage award entered against it.").)

The counterclaim that Matrix would like to now assert against the Trustee appears to be nothing more than an affirmative defense that the Trustee failed to mitigate any alleged losses stemming from Matrix' breach of the Matrix Contract.  However, Matrix, by its Answer in the Matrix Adversary Proceeding, ***never*** asserted failure to mitigate as an affirmative defense and, therefore, it is precluded from asserting it now.  *See, e.g., Travellers Intern., A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570, 1580 (2d Cir. 1994) (stating that failure to mitigate damages is an affirmative defense and therefore must be pleaded pursuant to Fed.R.Civ.P. 8(c)). Notwithstanding its failure to raise failure to mitigate as an affirmative defense, Matrix repeatedly raised and lost various issues regarding the 64 East Bid as a basis to avoid imposition of liability and as a basis for a reduction in the damages awarded to the Debtors.  (*See* Ex. A.) Matrix' eleventh-hour attempt to intervene is a blatant (and belated) attempt to relitigate issues raised in the Matrix Adversary Proceeding and to assert futile claims against the Trustee and the Rattet Defendants in the hopes of jeopardizing the Trustee's recent settlement with the Rattet Defendants in order to receive more favorable treatment in its own adversary proceeding.[7]  *See, e.g., United States  v. Yonkers Board of Educ.*, 801 F.2d 593, 596 (2d Cir. 1986) (affirming denial of motion to intervene even though only three months had passed because proposed intervenors were merely seeking to relitigate issues that had been decided against them).

---

[7]     Additionally, Matrix purports to assert cross-claims against the Rattet Defendants for fraud and breach of fiduciary duty.  (*See* Proposed Answer, ¶¶ 221-230.)  The Bankruptcy Court is without subject matter jurisdiction to adjudicate claims that do not affect the Debtors' estates and therefore Matrix' putative cross-claims are untenable as a matter of law.  *See, e.g., Buena Vista TV v. Adelphia Comm. Corp. (In re Adelphia Comm. Corp.)*, 307 B.R. 404, 413 (Bankr. S.D.N.Y. 2004).

**C.    Matrix Waived Any Argument that It Was Entitled to Intervention of Right Pursuant to Rule 24(a)(1).**

Matrix argues for the first time on appeal that it is entitled to intervene as of right pursuant to Rule 24(a)(1).[8]  (*See* Matrix Br. at 4-5.)  Matrix never asserted below, as it does now on appeal, that "[§] 1109(b) of the Bankruptcy Code . . . provides a statutory right for Matrix to intervene in this case," rather it only asserted that it was entitled to intervene pursuant to Rule 24(a)(2) and (b).  (*See* Matrix Br. at 3; Motion to Intervene, ¶¶ 68-76.)  Moreover, Matrix' Notice of Appeal, filed on April 17, 2008, states that it "appeals from so much of the Order that denied its motion to permissively intervene in [the 64 East Adversary Proceeding] and finding that in the Court's exercise of its discretion, intervention in th[e 64 East Adversary Proceeding] will unduly delay or prejudice the rights of the original parties."  (No. 07-8221, D.I. #93, at 1-2.)  As Matrix did not raise this argument for intervention below, it is waived.  *See, e.g., BBS Norwalk One, Inc. v. Raccolta, Inc.*, 117 F.3d 674, 678 (2d Cir. 1997) ("A circuit court, in general, will not consider issues raised for the first time on appeal."); *Lucente v. Int'l Bus. Mach. Corp.*, 310 F.3d 243, 256 (2d Cir. 2002) ("This argument was not properly preserved for appeal, as Lucente never raised it below and the district court did not address it in any of its opinions.").[9] Even if Matrix did not waive its argument below (which it did), Matrix is not entitled to intervene as of right under Rule 24(a) because (i) it failed to establish that it is a party in interest

---

[8]    Rule 24(a), entitled Intervention of Right, provides that "[o]n timely motion, the court must permit anyone to intervene who (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."

[9]    Matrix premises its argument that the Bankruptcy Court did not consider its request to intervene on the inclusion of the phrase "[i]ntervention is also not in the interests of the orderly administration of justice" appearing as the last sentence of Judge Glenn's Order.  (Matrix Br. at 4.)  Matrix has not provided any legitimate support to suggest that Judge Glenn did not consider its Motion to Intervene pursuant to Rule 24(a)(2).  As set forth below, Judge Glenn considered such issues as timeliness and prejudice to the existing parties and did ***not*** abuse his discretion in denying Rule 24(a)(2) intervention.

within the meaning of § 1109(b), and (ii) Judge Glenn did not abuse his discretion in determining

that Matrix' request to intervene was untimely.

**D.     Matrix Is Not a "Party in Interest" Within the Meaning of § 1109(b).**

Matrix asserts that it is a party in interest – per § 1109(b) – and therefore it has an

unconditional right to intervene.  (Matrix Br. at 3, 7 ("In this case, Matrix has an unconditional

right to intervene, and the <u>only</u> issue that the Court needs to determine is whether or not the

motion was made timely.") (emphasis supplied).)  Intervention by a party in interest in a Chapter

11 bankruptcy proceeding is governed by § 1109(b), which provides:

> A party in interest, including the debtor, the trustee, a creditor's
> committee, an equity security holder's committee, a creditor, an
> equity security holder, or any indenture trustee, may raise and may
> appear and be heard on any issue in a case under this chapter.

Matrix' conclusory statement that it is a party in interest, without more, does ***not*** transform

Matrix into a party in interest.  Matrix is ***not*** a debtor, trustee, creditor committee, an equity

holder or an indenture trustee; rather, it is merely a defendant in a separate adversary proceeding.

Courts within the Second Circuit have repeatedly stated that a party in interest's status

"must be construed in light of the Bankruptcy Code and is determined on an *ad hoc* basis."  *See,*

*e.g.*, *In re Ionosphere Clubs, Inc.*, 101 B.R. 844, 851 (Bankr. S.D.N.Y. 1989) (stating that

"[g]ranting peripheral parties status as parties in interest thwarts the traditional purpose of

bankruptcy laws, which is to provide reasonably expeditious rehabilitation of financially

*distressed* debtors with a consequent distribution to creditors who have acted diligently")

(citation omitted).  For example, in *E*Trade Fin. Corp. v. MarketXT Holdings Corp. (In re*

*MarketXT Holdings Corp.)*, Empyrean Investment Fund, L.P. ("EIF") moved to intervene in two

adversary proceedings involving the Trustee and the Creditors Committee of Market XT

Holdings Corp. 336 B.R. 67, 73 (Bankr. S.D.N.Y. 2006).  EIF – as Matrix now does for the first

time on appeal – asserted that it had an unconditional right to intervene pursuant to § 1109(b).  In

denying EIF's Motion to Intervene, the bankruptcy court found that a party's "status as a

defendant in an adversary proceeding does **not** make it a party in interest entitled to intervene in

other adversary proceedings under § 1109."  *Id.* (emphasis added); *see also In re E.S. Bankest,

L.C.*, 321 B.R. 590, 598-99 (Bankr. S.D. Fla. 2005) (defendant in adversary proceeding, who did

not file claim against estate, lacked "party in interest" standing since motion was litigation tactic

to delay and hinder prosecution of adversary proceeding with ultimate goal of reducing estate's

recovery in connection therewith); *In re FBN Food Servs., Inc.*, No. 93-C-6347, 1995 WL

230958, at *4 (N.D. Ill. Apr. 17, 1995) (rejecting argument that defendant in adversary

proceeding is a party in interest under § 1109(b)).[10]

In this case, Matrix has **not** met its burden of demonstrating **any** basis for the Bankruptcy

Court or this Court to conclude that it is a party in interest under § 1109(b).  Rather, Matrix

repeatedly asserts – without support – that it has "a substantial and vested interest in the [64 East

Adversary Proceeding]."  (Matrix Br. at 9.)  Matrix' argument is textbook bootstrapping in that it

presumes it is a creditor (and therefore a party in interest) because it has requested leave to

intervene to assert arguments that it has already advanced (and have been rejected) in the Matrix

Adversary Proceeding.  Matrix availed itself of every opportunity to assert its alleged mitigation

defense in the Matrix Adversary Proceeding.  Unhappy with Judge Hardin's rulings against it

relative to its arguments that the 64 East bid somehow mitigated its damages exposure, Matrix

now seeks to inject those same issues in the 64 East Adversary Proceeding.  As a result, Judge

---

[10]     Matrix' reliance on *Term Loan Holder Committee v. Ozer Group, L.L.C.* (*In re The Caldor Corporation*),
303 F.3d 161 (2d Cir. 2002), and *Iridium India Telecom Ltd. v. Motorola, Inc.*, 165 Fed. Appx. 878, 2005 WL
3557254 (2d Cir. (N.Y.) Dec. 28, 2005), is inapposite.  (Matrix Br. at 8.)  The *Caldor* and *Iridium India* decisions do
not stand for the proposition that a proposed intervenor can dispense with the initial hurdle of establishing its party
in interest status and can intervene at will at any time at any stage of any proceeding, regardless of the notice that
they have had and without regard to the delay that allowing such a motion to intervene might occasion.

Glenn was within his discretion in denying intervention because, among other things, "[t]he relief that Matrix requests in th[e 64 East Adversary Proceeding] should more properly be sought in the [Matrix Adversary Proceeding] before Judge Hardin."  (Adv. Proc. No. 07-8221, D.I. #91, at 2.)

**E.      The Bankruptcy Court Did Not Abuse Its Discretion in Holding That Matrix' Motion to Intervene Was Untimely.**

Matrix' argument that it is entitled to intervene also fails because it did not timely seek intervention.  Matrix waited ***more than 13 months*** after the commencement of the 64 East Adversary Proceeding and after the Trustee already settled with ***more than 80%*** of the 64 East defendants and was in the process of settling with the remaining defendants before it sought leave to intervene.  It is well-settled that a party may not intervene of right (or otherwise) unless its request is timely.  *See, e.g., Iridium India Telecom*, 329 B.R. at 405 ("Neither [§] 1109(b) nor the *Caldor* decision, however, relieves a party in interest of the obligation to exercise any right of intervention on a timely basis"), *aff'd*, 165 Fed. Appx. 878 (2d Cir. 2005); *United States v. State of N.Y.*, 820 F.2d 554, 556 (2d Cir. 1987).

In assessing timeliness, the Second Circuit has identified four factors to guide courts in the exercise of their discretion:

> (i)      How long the applicant had notice of the interest before it made the Motion to Intervene;
>
> (ii)     Prejudice to existing parties resulting from any delay;
>
> (iii)    Prejudice to the applicant if the motion is denied; and
>
> (iv)    Presence of unusual circumstances militating for or against a finding of timeliness.

*Farmland Dairies v. Comm'r of N.Y. State Dep't of Agriculture & Markets*, 847 F.2d 1038, 1044 (2d Cir. 1988) (district court did not abuse its discretion in denying motion to intervene as

untimely).   As demonstrated below, an examination of these factors shows that Judge Glenn's ruling denying Matrix' Motion to Intervene was proper **and** not an abuse of discretion.   (*See, e.g.*, *NAACP v. New York*, 413 U.S. 345, 366 (1973) (timeliness of a motion to intervene "is to be determined by the court in the exercise of its sound discretion; unless that discretion is abused, the court's ruling will not be disturbed on review").

    1.    <u>Matrix Delayed Seeking Intervention for More Than Thirteen Months.</u>

It is well-settled Second Circuit law that among the most important aspects in determining the timeliness of an intervention motion is the time lapse after the intervenor was on actual or constructive notice of the right it seeks to protect by intervening.  *See, e.g.*, *Iridium India Telecom, Ltd.*, 165 Fed. Appx. at 880 (finding that timeliness is measured from "the start of the proceedings – *specifically, when an applicant was aware or should have been aware of the adversarial proceedings*") (emphasis added); *Catanzano v. Wing*, 103 F.3d 223, 234 (2d Cir. 1996) (affirming denial of motion to intervene as untimely because putative intervenors "knew or should have known many months (probably years) before they filed their intervention motions" about the litigation in which they sought to inject themselves).[11]

Under the abuse of discretion standard, courts in this Circuit have repeatedly sustained denials of intervention as untimely.  *See, e.g., Bernheim v. Damon & Morey LLP*, Nos. 06-3386-BK, 06-3389-BK (CON), 2007 WL 1858292, at *2 (2d Cir. (N.Y.) June 28, 2007) (affirming district court's denial of motion to intervene because proposed intervenor did not seek intervention until three months after he first learned of his alleged need for intervention); *Butler,*

---

[11]    Strangely, Matrix' appellate brief cites *Duttle v. Bandler & Kass*, 147 F.R.D. 69 (S.D.N.Y. 1993), for the proposition that "[i]n determining timeliness, three factors that bear particular consideration are . . . ."   (Matrix Br. at 5.)  As an initial matter, the Second Circuit has made it abundantly clear that, as set forth above, four factors are considered in determining timeliness and, in *Duttle*, the district court **denied** the government's request to intervene as untimely and because the existing parties would suffer considerable prejudice because they were on the eve of settlement.

*Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 182-83 (2d Cir. 2001) (no abuse of discretion in denying motion to intervene where intervenor waited one year after movant realized or should have realized a threat to its interest); *In re Bank of New York Derivative Litig.*, 320 F.3d 291, 300 (2d Cir. 2003) (affirming denial of motion to intervene; since the "lawsuit had been pending for more than two years, and has garnered no small amount of media attention," the proposed intervenor had notice for some time); *see also NAACP*, 413 U.S. at 367 (affirming denial of a Motion to Intervene when movant waited four months after it became aware of its interest in litigation before seeking to intervene).

***At an absolute minimum***, Matrix had knowledge or notice of the claims and issues presented in the 64 East Adversary Proceeding when the Trustee filed her Complaint commencing the action ***on February 13, 2007***.  (Adv. Proc. No. 07-8221, D.I. #1.)  In actuality, Matrix' knowledge pre-dates the Trustee's commencement of the 64 East Adversary Proceeding by many months.  Among other things, Mr. Rosen was present (on behalf of Matrix) during a March 15, 2006 conference in which Judge Hardin read into the record a certain letter outlining what he perceived to be certain improprieties with respect to the 64 East bid.  (*See* March 15, 2006 Tr. at 7.)  Matrix does not explain why it waited 13 months and only after 13 of the 16 of the 64 East Adversary Proceeding defendants had settled (and the rest of the parties were in the process of settling) to seek leave to intervene.  The reason is clear; unsatisfied with the result in the Matrix Adversary Proceeding, Matrix is hoping to increase its bargaining position with the Trustee by intervening in the 64 East Adversary Proceeding.

Matrix' appeal brazenly asks this Court to turn a blind eye to all the instances when it has advanced identical arguments regarding the effect of the 64 East bid in the Matrix Adversary Proceeding ***and*** to rule that its Motion to Intervene is timely because it was filed within one

month of the Trustee's Amended Complaint in the 64 East Adversary Proceeding, while at the same time arguing that it has no ability to protect its interests. (*See* Matrix Br. at 6.) It is abundantly clear that (i) Matrix had knowledge about the issues about which it now seeks to intervene in the 64 East Adversary Proceeding as early as March 2006; (ii) the Motion to Intervene is a transparent attempt to relitigate issues already raised and decided by Judge Hardin in the Matrix Adversary Proceeding; (iii) its putative "counterclaim" is nothing more than a futile attempt to raise the affirmative defense of mitigation; (iv) Matrix' statements in its appellate brief regarding lack of judicial recourse directly contradict its actions in appealing the Matrix Decision; and (v) Judge Glenn did ***not*** abuse its discretion when it denied the Motion to Intervene. Matrix' attempt to obtain a second bite of the apple in front of Judge Glenn after Judge Hardin rejected its arguments in the Matrix Adversary Proceeding should not be countenanced.

2.    <u>Matrix' Delayed Intervention Will Prejudice the Existing Parties.</u>

The second consideration – prejudice to the current parties – also unequivocally supports Judge Glenn's decision. Permitting Matrix to intervene at this late stage of the 64 East Adversary Proceeding will impose needless costs and delay on the Debtors and their estates. During the more than 13 month period that Matrix knew of the 64 East Adversary Proceeding – but elected not to attempt to intervene or to assert third-party claims in the Matrix Adversary Proceeding – the parties have invested substantial time and effort in extensive motions practice, mediation and settlement discussions, which have culminated in the settlement of the Trustee's claims against ***all*** 16 defendants. Matrix' attempt to further delay the resolution of the 64 East Adversary Proceeding and to impose substantial (and needless) prejudice on the existing parties (including the Debtors' estates) should not be countenanced. *See, e.g., Duttle*, 147 F.R.D. at 76 (stating that rapid progression of litigation during delay is a further basis for denial of motion to

intervene); *In re Ionosphere Clubs, Inc.*, 101 B.R. at 854 (denying intervention "in light of the complexity of the case and the speed in which this case is progressing" because "the estate is hemorrhaging at a rapid rate"). Indeed, Matrix' attempt to intervene appears motivated by a desire to disrupt the recently reached settlement with the Rattet Defendants. This fact alone constitutes considerable prejudice to the existing parties and warrants denial of intervention. *See, e.g.*, *In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 198 (2d Cir. 2000) (affirming denial of motion to intervene where granting intervention would have jeopardized a settlement) (citing *Pitney Bowes, Inc.*, 25 F.3d at 72 (finding prejudice to existing parties since they would have "to begin [settlement] negotiations again from scratch"); *Farmland Dairies*, 847 F.2d at 1044 ("Furthermore, if Appellants were permitted to intervene at this late date, there is no question that the settlement concluded by Farmland and the State would be jeopardized."); *In re NASDAQ Market-Makers Antitrust Litigation*, 187 F.R.D. 465, 490-91 (S.D.N.Y. 1998) ("Interjecting any new issues at this juncture, following the negotiation of settlements, would be unsettling and untimely.").

3.    <u>Matrix Will Suffer No Prejudice If Intervention Is Denied</u>.

By contrast, Matrix' argument that it will suffer prejudice if intervention is denied is inconsistent with the actions it is taking in pursuing an appeal of the very issues it seeks to relitigate in the 64 East Adversary Proceeding. Matrix has already advanced the arguments which it now – having lost before Judge Hardin – seeks to relitigate in the 64 East Adversary Proceeding, despite the fact that it is currently appealing the Matrix Decision.[12] Moreover, as it has known about the pendency of the 64 East Adversary Proceeding since February 2007, it

---

[12]    Also, as noted above, failure to mitigate is an affirmative defense that must have been asserted in the Matrix Answer or it is waived as a matter of law. Thus, to the extent that Matrix did not raise such arguments in the Matrix Adversary Proceeding, it cannot now do so in the 64 East Adversary Proceeding.

cannot now complain about Judge Glenn's refusal to grant it leave to intervene.  *See, e.g., In re Bank of New York Derivative Litig.*, 320 F.3d at 300 (stating that proposed intervenor's interest will be protected in lawsuit in which it is already a party); *Duttle*, 147 F.R.D. at 76 ("[I]n making the choice between the possibility of harm to the late-arriving prospective intervenors as against the possible harm to the parties who have participated diligently during the pertinent portions of this litigation, it does not strike us as unjust that intervention on the part of the late-arrivers must yield under all of the circumstances herein.").

    4.    The Only Unusual Circumstances Militate Against Finding the Application Timely.

By its Motion to Intervene, Matrix did not even attempt to suggest that unusual circumstances support its application.  What makes the circumstances of the 64 East Adversary Proceeding so unusual is that Matrix is attempting to intervene in an adversary proceeding that no longer exists.  As noted previously, the Trustee has reached a settlement with the Rattet Defendants and, with the Bankruptcy Court's anticipated approval of that settlement at or after the July 22, 2008 hearing, the 64 East Adversary Proceeding will be closed.  Such considerations militate against a finding that Matrix' Motion to Intervene is timely.  *See, e.g., Duttle*, 147 F.R.D. at 76 (recognizing the fact that existing parties endeavored to settle lawsuit as an unusual circumstance militating against a finding of timeliness); *In re Sunbeam Corp.*, 287 B.R. at 863.

**F.**    **Matrix Has Not Satisfied *Any* of the Remaining Rule 24(a)(2) Factors.**

Matrix alternatively suggests that "if this Court determines that it must look past the holding in *Caldor* and *Iridium* to determine if intervention is warranted, the Court should consider the requirements of Rule 24(a)(2)."  (Matrix Br. at 8.)  Rule 24(a)(2) allows intervention *only* upon proof of four factors.  Specifically, a proposed intervenor must "(1) file timely; (2) demonstrate an interest in the action; (3) show an impairment of that interest arising from an

unfavorable disposition; **and** (4) have an interest not otherwise adequately protected." *United States v. State of New York*, 820 F.2d at 556 (emphasis added). Each of these requirements must be satisfied; failure to meet any one mandates denial. *Id.* As set forth above, Judge Glenn properly exercised his discretion in finding that Matrix' Motion to Intervene was untimely, and that finding alone is sufficient to affirm his decision.

According to Rule 24(a)(2), to intervene as of right, the movant must possess "an interest relating to the property or transaction which is the subject of the action." This interest must be "significantly protectable." *Donaldson v. United States*, 400 U.S. 517, 531 (1971) (finding that a taxpayer's interest in former employer's routine tax records was not sufficient to support a Motion to Intervene); *Kheel v. American S.S. Owners Mut. Protection & Indem. Ass'n*, 45 F.R.D. 281, 284 (S.D.N.Y. 1968) (stating that "the mere existence of a third person's contingent interest in the outcome of pending litigation is insufficient to warrant intervention").

For its alleged protectable interest, Matrix asserts that the 64 East bid "had a direct impact on Matrix and the outcome of the adversary proceeding against [it] both as to liability and as to damages." (Matrix Br. at 9.) Matrix is, quite simply, **not** seeking leave to intervene to protect any putative interest; rather, it is seeking ***affirmative relief*** by its proposed counterclaim against the Trustee and cross-claims against the Rattet Defendants. Moreover, Matrix fails to inform this Court of Judge Hardin's rulings in the Matrix Decision, where he held, among other things, that Matrix' "argument borders on the ridiculous." *In re Food Management Group, LLC*, 372 B.R. at 208. Without a protectable interest, Matrix' request to intervene under Rule 24(a)(2) fails. *MasterCard Int'l. Inc. v. Visa Int'l. Serv. Ass'n, Inc.*, 471 F.3d 377, 390 (2d Cir. 2006) (affirming denial of motion to intervene because proposed intervenor did not have sufficient interest in existing litigation).

## II.
## JUDGE GLENN DID NOT ABUSE HIS CONSIDERABLE DISCRETION
## IN DENYING PERMISSIVE INTERVENTION.

Matrix, by its Motion to Intervene, alternatively asserts that it is "entitled to permissive intervention." (Motion to Intervene, ¶ 77.) However, on appeal, Matrix does not assert that Judge Glenn abused his discretion in denying its request to permissively intervene. As such, Matrix has waived any argument that Judge Glenn abused his discretion in denying its request to permissively intervene pursuant to Rule 24(b). *See, e.g., BBS Norwalk One, Inc.* 117 F.3d at 678. Moreover, because permissive intervention is (by definition) never mandatory, "[r]eversal of a district court's denial of permissive intervention is a very rare bird indeed, so seldom seen as to be considered unique." *United States Postal Service v. Brennan,* 579 F.2d 188, 192 (2d Cir. 1978) (noting failure to find a single case where denial of permissive intervention was reversed as an abuse of discretion). Judge Glenn's ruling on Matrix' Motion to Intervene was correct for the reasons set forth above, and certainly not an abuse of discretion.[13]

---

[13]    Finally, Matrix contends, without any support, that Judge Glenn may have erred in "denying Matrix' Motion [to Intervene], *sua sponte*, without a hearing, or even without the other parties being heard on the matter." (Matrix Br. at 1.) Matrix is wrong. The law is clear that a court, acting in its discretion in granting or denying a motion to intervene, is not required to hold a hearing. *See, e.g., Bernheim*, 2007 WL 1858292, at *2 (denying contention that the district court abused its discretion in failing to conduct an evidentiary hearing when the underlying record was sufficient to make a decision); *In re BDC 56 LLC*, 330 F.3d 111, 119 n.5 (2d Cir. 2003) (bankruptcy court is not obligated to hold a hearing). As Judge Glenn is very familiar with the nuances and intricacies of the 64 East Adversary Proceeding, he was within his discretion to deny Matrix' request to intervene without conducting a hearing.

<u>CONCLUSION</u>

The Trustee respectfully submits that, for the reasons set forth herein, Judge Glenn did not abuse his discretion in denying Matrix' Motion to Intervene. Accordingly, the Order should be affirmed in its entirety and the instant appeal therefrom denied.

Dated: July 7, 2008               Respectfully submitted,
     Chicago, Illinois


**DRINKER BIDDLE & REATH LLP**

By:    <u>/s/ Warren von Credo Baker</u>
       Warren von Credo Baker (WB 1100)
       David S. Almeida (DA 8341)
       191 North Wacker Drive, Suite 3700
       Chicago, Illinois 60606-1698
       Tel:  (312) 569-1000
       Fax:  (312) 569-3000

       *Counsel to Appellee Janice B. Grubin, as Chapter 11 Trustee*

CH01/ 25169763

## EXHIBIT A

**FILINGS BY MATRIX REALTY GROUP, INC., IN MATRIX ADVERSARY
PROCEEDING, ADV. PRO. NO. 05-A-08636-ASH,
IN WHICH THE 64 EAST 126TH REALTY LLC ASSET PURCHASE BID
IS REFERENCED**

| Title of Document | Docket No. | Pages | Date Filed |
|---|---|---|---|
| Motion for Summary Judgment and Opposition to Trustee's Motion for Summary Judgment, including Affidavit of Richard Nieto in Opposition to Plaintiff's Motion for Summary Judgment and in Support of Defendant's Motion for Summary Judgment | 22 | 14-17 | 4/17/2006 |
| Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment and in Support of Defendant's Motion for Summary Judgment | 24 | 19-21 | 4/17/2006 |
| Application in Support of a Stay of the Trial in Connection with the Above-Referenced Action Pending the Determination of the Appeal | 39 | 9-13 | 5/26/2006 |
| Memorandum of Law in Support of a Stay of the Trial in Connection with the Above-Referenced Action Pending the Determination of the Appeal | 40 | 14-18 | 5/26/2006 |
| Defendant's Trial Memorandum of Law | 51 | 11-12 | 6/13/2006 |
| Defendant's Post-Trial Memorandum | 77 | 40 | 8/21/2006 |
| Defendant's Post-Trial Sur-Reply Brief | 85 | 6-7, 24-25 | 9/21/2006 |
| Defendant's Supplemental Post-Trial Memorandum of Law | 91 | 48-53 | 2/23/2007 |
| Supplemental Memorandum of Law Submitted by Defendant in Connection with the Issue of Damages | 103 | 9-10 | 11/6/2007 |

# Exhibit B
# Index of Unpublished Decisions

1.  *Bernheim v. Damon & Morey LLP,* Nos. 06-3386-BK (LEAD), 06-3389-BK (CON), 2007 WL 1858292 (2d. Cir. (N.Y.) June 28, 2007)

2.  *In re FBN Food Servs., Inc.,* No. 93 C 6347, 1995 WL 230958 (N.D. Ill. Apr. 17, 1995)

3.  *Greenidge v. Allstate Ins. Co.,* 82 Fed. Appx. 728, 2003 WL 22955865 (2d Cir. (N.Y.) Dec. 11, 2003)

4.  *Iridium India Telecom Ltd. v. Motorola, Inc.,* 165 Fed. Appx. 878, 2005 WL 3557254 (2d Cir. (N.Y.) Dec. 28, 2005)

5.  *Kunz v. New York State Comm'n on Judicial Misconduct,* 155 Fed. Appx. 21, 2005 WL 2982156 (2d. Cir. (N.Y.) Nov. 8, 2005)

6.  *In re Stephenson,* Nos. 96 Civ. B 557, 96 Civ. 558, 1996 WL 403087 (S.D.N.Y. July 18, 1996)

Westlaw.

Slip Copy                                                                                              Page 1
Slip Copy, 2007 WL 1858292 (C.A.2 (N.Y.))
**(Cite as: 2007 WL 1858292 (C.A.2 (N.Y.)))**

H Bernheim v. Damon and Morey, LLP
C.A.2 (N.Y.),2007.
Only the Westlaw citation is currently available.This
case was not selected for publication in the Federal
Reporter.Not for Publication in West's Federal
Reporter RULINGS BY SUMMARY ORDER DO
NOT HAVE PRECEDENTIAL EFFECT.
CITATION TO SUMMARY ORDERS FILED
AFTER JANUARY 1, 2007, IS PERMITTED AND
IS GOVERNED BY THIS COURT'S LOCAL RULE
0.23 AND FEDERAL RULE OF APPELLATE
PROCEDURE 32.1. IN A BRIEF OR OTHER
PAPER IN WHICH A LITIGANT CITES A
SUMMARY ORDER, IN EACH PARAGRAPH IN
WHICH A CITATION APPEARS, AT LEAST ONE
CITATION MUST EITHER BE TO THE
FEDERAL APPENDIX OR BE ACCOMPANIED
BY THE NOTATION: "(SUMMARY ORDER)",
UNLESS THE SUMMARY ORDER IS
AVAILABLE IN AN ELECTRONIC DATABASE
WHICH IS PUBLICLY ACCESSIBLE WITHOUT
PAYMENT OF FEE (SUCH AS THE DATABASE
AVAILABLE AT
HTTP://WWW.CA2.USCOURTS.GOV), THE
PARTY CITING THE SUMMARY ORDER MUST
FILE AND SERVE A COPY OF THAT
SUMMARY ORDER TOGETHER WITH THE
PAPER IN WHICH THE SUMMARY ORDER IS
CITED. IF NO COPY IS SERVED BY REASON
OF THE AVAILABILITY OF THE ORDER ON
SUCH A DATABASE, THE CITATION MUST
INCLUDE REFERENCE TO THAT DATABASE
AND THE DOCKET NUMBER OF THE CASE IN
WHICH THE ORDER WAS ENTERED.Summary
orders prior to January 1, 2007 are subject to
additional limitations. See Fed. Rule of Appellate
Procedure 32.1 generally governing citation of
judicial decisions issued on or after Jan. 1, 2007. See
also Second Circuit Rule U.S.Ct. of App. 2nd Cir. s
0.23, 28 U.S.C.A. (Find CTA2 Rule 0.23)
United States Court of Appeals,Second Circuit.
L. Andrew BERNHEIM, Intervenor-Appellant,
D.A. Elia Construction Corp., Debtor-Appellant,
v.
DAMON AND MOREY, LLP, Defendant-Appellee,
United States Trustee, Trustee.
**Nos. 06-3386-BK (LEAD), 06-3389-BK (CON).**

June 28, 2007.

Philippe L. Guarino, Mougins, France (Krista
Gottlieb, of Counsel, Mattar, D'Agostino & Gottlieb,
LLP, Buffalo, NY, on the brief) for Intervenor-
Appellant L. Andrew Bernheim.
David B. Smith, Feuerstein & Smith, LLP, Buffalo,
NY, for Debtor-Appellant D.A. Elia Construction
Corp.
Daniel F. Brown, of Counsel, Damon & Morey, LLP,
Buffalo, NY, for appellee.

Present ROBERT D. SACK, BARRINGTON D.
PARKER, and PETER W. HALL, Circuit Judges.

**SUMMARY ORDER**

**\*1** UPON DUE CONSIDERATION of this appeal
from a final decision of the United States District
Court for the Western District of New York (Arcara,
*C.J.*), it is hereby ORDERED, ADJUDGED, AND
DECREED, that the judgment of the District Court is
AFFIRMED.

Debtor-Appellant D.A. Elia Construction Corp.
("Debtor") appeals from that portion of the June 20,
2006 judgment of the Honorable Richard J. Arcara,
United States District Judge for the Western District
of New York, affirming the October 19, 2004
decision of the Honorable Michael J. Kaplan, United
States Bankruptcy Judge for the Western District of
New York, awarding in full the attorney fees
requested by Appellee Damon & Morey, LLP ("D &
M") in its sixth and final fee application. Intervenor-
Appellant L. Andrew Bernheim ("Bernheim")
appeals from that portion of the June 20, 2006
judgment denying Bernheim's motion to intervene in
the District Court's review of the Bankruptcy Court's
fee award. We assume the parties' familiarity with the
facts, procedural history of the case, and issues
presented on appeal.

*I. The Approval in Full of D & M's Final Fee
Application*

"Bankruptcy courts enjoy wide discretion in
determining reasonable fee awards, which discretion

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

will not be disturbed by an appellate court absent a showing that it was abused."*In re JLM, Inc.*, 210 B.R. 19, 23 (B.A.P.2d Cir.1997) (citing *Dickinson Indus. Site v. Cowan*, 309 U.S. 382, 389 (1940))." 'An abuse of discretion arises where (1) the bankruptcy judge fails to apply the proper legal standard or follows improper procedures in determining the fee award, or (2) bases an award on findings of fact that are clearly erroneous.' " *Id.* (quoting *In re Hunt*, 196 B.R. 356, 358 (N.D.Tex.1996)). The inquiry is focused on "whether there is a reasonable basis in the record to support the propriety of the bankruptcy judge's decision," not on whether "the appellate court might have ruled differently if presented with the same evidence." *Id.* (citing *Anderson v. City of Bessemer*, 470 U.S. 564, 574 (1985)).

*A. D & M's Alleged Conflicts of Interest and Negligence*

Judge Kaplan refused to reduce D & M's fee award in the face of the Debtor's allegations that D & M rendered conflicted and negligent representation. Judge Kaplan refused because the Debtor's allegations were inconsistent with both Judge Kaplan's first hand observation of the quality of D & M's performance in this surplus Chapter 11 case and the Debtor's continued retention of D & M throughout the duration of the case. Based, inter alia, on those inconsistencies, Judge Kaplan found the Debtor's allegations incredible. Because the record substantially supports Judge Kaplan's findings, we cannot say that he abused his discretion in approving in full D & M's final fee application. The fact that D & M admitted to having labored temporarily under one of the conflicts alleged by the Debtor does not compel a holding to the contrary. *See* 11 U.S.C. § 328(c) (providing that a bankruptcy court "*may* deny compensation" to a professional found to have been laboring under a conflict of interest (emphasis added)); *In re Angelika Films 57th, Inc.*, 246 B.R. 176, 179 (S.D.N.Y.2000) (explaining that the decision to deny fees due to conflicted representation is within the discretion of the bankruptcy court); *see also Gray v. English*, 30 F.3d 1319, 1324 (10th Cir.1994) (stating that section 328(c) "was intended to give the bankruptcy court some discretion with respect to attorney fee awards when the attorney loses his disinterested status during the course of administering a bankrupt's estate. The permissive 'may deny' language does not require the court to

deny legal fees or disgorge previously paid fees in all cases").

*B. Reasonableness of D & M's Fee Calculation*

**\*2** Under the circumstances presented in this case, we conclude that the Bankruptcy Court did not abuse its discretion in approving as reasonable D & M's final fee application. Judge Kaplan presided over this bankruptcy for its duration and had the opportunity to evaluate first-hand both the quality of D & M's performance and the contributions made by the firm to a rarity-a Chapter 11 case in which all general creditors were paid in full. *See New York, N.H. & H.R. Co. v. Iannotti*, 567 F.2d 166, 179 (2d Cir.1977) (stating that where the bankruptcy judge has presided over a reorganization continuously, was fully aware of all aspects of the complex proceedings, knew the attorneys and parties involved, and was thus uniquely well qualified to assess their respective contributions, the party challenging the bankruptcy judge's fee award bears a "heavy burden of demonstrating that th[e] experienced judge ... abused his discretion").

*C. Failure to Conduct an Evidentiary Hearing*

Finally, the Debtor argues that Judge Kaplan abused his discretion by failing to conduct an evidentiary hearing regarding either the reasonableness of D & M's fee application or the Debtor's allegations of D & M's conflicted and negligent performance. Under 11 U.S.C. § 330(a), the bankruptcy court must provide notice and a hearing before awarding attorney fees. The Bankruptcy Code explains that the phrase "notice and a hearing" means notice and hearing "appropriate in the particular circumstances." 11 U.S.C. § 102(1)(A). Bankruptcy judges enjoy broad discretion as to the type of hearing to conduct. *See In re Eliapo*, 468 F.3d 592, 603 (9th Cir.2006) (stating that hearing requirement may be satisfied by written submission that allows the applicant a "reasonable opportunity to present legal argument and/or evidence to clarify or supplement his Application") (internal quotation marks omitted); *In re I Don't Trust*, 143 F.3d 1, 3 (1st Cir.1998) ("The words 'after notice and hearing' denote notice and an opportunity for a hearing *as appropriate in the particular circumstances,* but a hearing-much less an evidentiary hearing-is not required in every instance."); *cf. In re Blaise*, 219 B.R. 946, 949 (B.A.P.2d Cir.1998) (holding, in the context of the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

bankruptcy court's ability to convert a Chapter 13 case to a Chapter 7 after notice and a hearing under 11 U.S.C. § 1307(c), that under § 102(1)(A), in light of the ample opportunity afforded to the appellant to contest the motion to convert, an evidentiary hearing was not required). Here, by allowing the Debtor both to file its detailed objection and to rebut D & M's response to that objection, Judge Kaplan gave the Debtor more than ample opportunity to present its arguments to the Court, thus fulfilling the "hearing" requirement of 11 U.S.C. § 330(a).

II. *Denial of Bernheim's Motion to Intervene*

Timeliness is an essential element of a motion to intervene and "[n]either section 1109 nor [*In re Caldor Corp.,* 303 F.3d 161 (2d Cir.2002) ] ... relieves a party in interest of the obligation to exercise any right of intervention on a timely basis."*In re Iridium Operating, LLC,* 329 B.R. 403, 405 (S.D.N .Y.2005). Here, Bernheim did not file his motion to intervene until August 12, 2005, seven weeks after the District Court heard oral argument, and three months after Bernheim first learned of the Debtor's appeal of the fee award to the District Court. Bernheim argues that an order of the Bankruptcy Court prevented him from recovering documents necessary to prepare his motion. Bernheim offers, however, no explanation for his failure to have at least timely apprised the District Court of his intention to intervene and his difficulty in securing any necessary documents. *See United States v. Pitney Bowes, Inc.,* 25 F.3d 66, 71 (2d Cir.1994) (affirming denial of motion to intervene as untimely, even though delay was caused by pending event that may have prevented the need to intervene, because intervenor failed to file the motion "as an anchor to windward" as soon as it became aware of its interest). As Bernheim has failed to justify his three month delay in filing his motion to intervene, we cannot say that the District Court abused its discretion in denying that motion as untimely. We need not and do not address the District Court's determinations that Bernheim's failure to object at the bankruptcy level was not excused, and that Bernheim lacks standing to intervene.

*3 For the foregoing reasons, the judgment of the District Court is hereby AFFIRMED.

C.A.2 (N.Y.),2007.

Bernheim v. Damon and Morey, LLP
Slip Copy, 2007 WL 1858292 (C.A.2 (N.Y.))

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.
Not Reported in F.Supp., 1995 WL 230958 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp., 1995 WL 230958 (N.D.Ill.))**

Page 1

**H**In re FBN Food Services, Inc.
N.D.Ill.,1995.
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division
In re FBN FOOD SERVICES, INC., Debtor,
**No. 93 C 6347.**

April 17, 1995.

*MEMORANDUM OPINION AND ORDER*

CONLON, District Judge.
**\*1** This case arises out of bankruptcy proceedings involving FBN Food Services, Inc. ("FBN"). On September 2, 1993, the bankruptcy court denied the motion of River Bank America ("River Bank") to vacate a claim brought against the FBN estate by SIG Food Services Associates ("SFSA"). The court found that River Bank lacked standing to challenge the SFSA claim. River Bank appeals the decision of the bankruptcy court.

*BACKGROUND*

The facts are undisputed. On April 25, 1991, three FBN creditors initiated Chapter 7 bankruptcy proceedings against FBN by filing an involuntary petition. On September 16, 1991, the bankruptcy court entered an order requiring claims against the FBN estate to be filed by December 16, 1991. A total of $446,382.82 in claims were asserted against the FBN estate prior to the December 16 deadline.

On July 9, 1992, James Carmel, FBN's bankruptcy trustee, commenced an adversary proceeding in the bankruptcy court against River Bank ("the adversary proceeding"). The adversary proceeding sought to recover $1,400,000 River Bank allegedly obtained in a fraudulent transfer voidable under 11 U.S.C. § 548.[FN1]

On April 29, 1993, SFSA and Carmel entered a stipulation allowing a claim by SFSA as an unsecured creditor of the FBN estate in the amount of $2,404,323.96. The stipulation was approved by the bankruptcy court. On July 26, 1993, River Bank moved to vacate the order allowing the SFSA claim. River Bank contended that the stipulation entered by SFSA failed to fairly disclose: (1) a close relationship between SFSA and FBN; (2) the fact that SFSA's claim was untimely; and (3) the fact that SFSA's claim was approximately six times greater than all timely filed claims combined. River Bank further claimed that SFSA and Carmel had failed to adequately notify FBN's creditors of the stipulation and that the SFSA claim arose out of the same allegedly fraudulent transaction at issue in the adversary proceeding. Wendell E. Spears, a FBN creditor, filed a notice of non-joinder in River Bank's motion, stating that although he was interested in the disallowance of the SFSA claim, he did not have sufficient economic interest to become embroiled in the dispute.

On August 27, 1993, the bankruptcy court issued a bench ruling on River Bank's motion. The court noted that River Bank had no interest in the administration of the FBN estate except as a defendant in the adversary proceeding. 8/27/93 Tr. at 5. The court held that in order to qualify as a party in interest with standing to challenge the SFSA claim, River Bank needed to demonstrate some interest in FBN's assets. *Id.* at 6. The court found that River Bank had no such interest, noting that River Bank was not directly responsible for paying any part of the SFSA claim. *Id.* at 9. On September 2, 1993, the court entered a final order denying River Bank's motion for the reasons set forth in its bench ruling.

*DISCUSSION*

River Bank challenges the bankruptcy court's finding that it is not a party in interest with standing to object to claims against the FBN estate. The issue of River Bank's standing is a question of law; this court's review is therefore *de novo. See Hiatt v. Indiana State Student Assistance Commission,* 36 F.3d 21, 23 (7th Cir.1994), *cert. denied,*115 S.Ct. 1109 (1995).

**\*2** River Bank contends that its status as a defendant in the adversary proceedings made it a party in interest with standing to object to the SFSA claim. 11 U.S.C. § 502(a) provides:

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                    Page 2
Not Reported in F.Supp., 1995 WL 230958 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp., 1995 WL 230958 (N.D.Ill.))**

A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects.

Neither the bankruptcy code nor the bankruptcy rules define the term "party in interest"; its meaning is therefore determined in light of the bankruptcy code on a case-by-case basis. *In re River Bend-Oxford Assoc.,* 114 B.R. 111, 113 (Bankr.D.Md.1990); *In re Ionosphere Clubs,* 101 B.R. 844, 849 (Bankr.S.D.N.Y.1989). In interpreting this term, the Seventh Circuit has stated:
We think all [the "party in interest" requirement] means is that anyone who has a legally protected interest that could be affected by a bankruptcy proceeding is entitled to assert that interest with respect to any issue to which it pertains, thus making explicit what is implicit in an *in rem* proceeding-that everyone with a claim to the *res* has a right to be heard before the *res* is disposed of since that disposition will extinguish all such claims.

*In re James Wilson Assoc.,* 965 F.2d 160, 169 (7th Cir.1992). Non-creditors may be deemed parties in interest if they demonstrate a stake in the outcome of a bankruptcy matter. *In re UNR Industries,* 71 B.R. 467, 471 (Bankr.N.D.Ill.1987). *See also In re Standard Insulations, Inc.,* 138 B.R. 947, 950 (Bankr.W.D.Mo.1992) (insurer had standing to object to personal injury claims against bankrupt estate if insurer responsible for payment of claims); *In re Peter DelGrande Corp.,* 138 B.R. 458, 459 (Bankr.D.N.J.1992) (persons with potential responsibility for debtor's tax liability had standing to object to IRS tax claim).

River Bank is not a creditor of FBN and thus does not have a direct interest in the number or amount of claims against the FBN estate. However, River Bank asserts that it does have an interest in the SFSA claim insofar as it is a defendant in the adversary proceedings.[FN2] River Bank contends that the amount recoverable in a fraudulent conveyance action under 11 U.S.C. § 548 ("section 548") is limited to the amount needed to satisfy all creditors of the estate. River Bank contends that if the SFSA claim is disallowed, the estate will owe outstanding creditors only the $446,382.82 in claims asserted before

December 16, 1991. If the amount of creditor claims limits the damages recoverable in a fraudulent conveyance action under section 548, the disallowance of the SFSA claim will reduce River Bank's potential liability from $1.4 million to $446,382.82.

River Bank cites a host of cases arising under state fraudulent conveyance law in which recovery was limited to the amount needed to satisfy creditors. *See Patterson v. Missler,* 238 Cal.App.2d 759, 48 Cal.Rptr. 215 (1965); *Feltinton v. Rudnik,* 401 Ill. 362, 82 N.E.2d 436 (1948); *National Radiator Corp. v. Parad,* 297 Mass. 314, 8 N.E.2d 794 (1937); *Service Mortgage Corp. v. Welson,* 293 Mass. 410, 200 N.E. 278 (1936); *Windle v. Flinn,* 196 Or. 654, 251 P.2d 136 (1952); *Markward v. Murrah,* 138 Tex. 34, 156 S.W.2d 971 (1941). *See also In re Goss,* 43 F.2d 746 (N.D.Ga.1930) (fraudulent grantee normally entitled to surplus after recovery by creditors, although recovery barred by actual fraud). River Bank notes that fraudulent conveyance actions under the bankruptcy code are modeled on common law fraudulent conveyance actions. *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 60 (1989); *Wellman v. Wellman,* 933 F.2d 215, 218 (4th Cir.), *cert. denied,* 502 U.S. 925 (1991) (citing *Granfinanciera* ).

**\*3** The cases cited by River Bank are inapposite. Without exception, River Bank relies on cases that arose under statutes or common law rules treating a fraudulent conveyance as valid between the transferee and the debtor; the transaction was only invalid as to creditors. *See Goss,* 43 F.2d at 748; *Patterson,* 48 Cal.Rptr. at 218; *Feltinton,* 82 N.E.2d at 437; *National Radiator,* 8 N.E.2d at 796; *Service Mortgage,* 200 N.E. at 280; *Windle,* 251 P.2d at 144; *Markward,* 156 S.W.2d at 974. However, section 548 regards fraudulent conveyances as void; the transaction is invalid both as to creditors and as to the estate. Section 548 permits the trustee to "avoid" a transfer that is actually or constructively fraudulent. 11 U.S.C. § 548(a-b). Section 548 explicitly provides that a transferee in good faith may retain a lien on the property to the extent the transfer was in good faith; however, section 548 does not otherwise limit recovery by the trustee. 11 U.S.C. § 548(c).

River Bank asserts that even if the FBN trustee has a right to avoid the transfer under section 548, the scope of the trustee's recovery is limited by 11 U.S.C.

Not Reported in F.Supp.
Not Reported in F.Supp., 1995 WL 230958 (N.D.Ill.)
(Cite as: Not Reported in F.Supp., 1995 WL 230958 (N.D.Ill.))

Page 3

§ 550 ("section 550"). Section 550 provides, in relevant part:

[T]o the extent that transfer is avoided under section ... 548 ... of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property.

River Bank asserts that a recovery in excess of the amount needed to satisfy creditors will not be "for the benefit of the estate." In support of this assertion, River Bank cites numerous cases holding that a fraudulent conveyance action may not be maintained if recovery will benefit the debtor alone. *See Wellman,* 933 F.2d at 218-19; *In re Vintero Corp.,* 735 F.2d 740, 742 (2d Cir.), *cert. denied,* 469 U.S. 1087 (1984); *Whiteford Plastics Co. v. Chase National Bank,* 179 F.2d 582, 584 (2d Cir.1950); *In re Weisman,* 112 B.R. 138, 140-41 (Bankr.W.D.Pa.1990); *In re Liggett,* 118 B.R. 219, 222 (Bankr.S.D.N.Y.1990). In a chapter 7 proceeding, a fraudulent conveyance action may be maintained only if the action will benefit unsecured creditors. *In re Pearson Industries, Inc.,* 1995 WL 102463 at *9 (Bankr.C.D. Ill. Mar. 9, 1995); *In re Conley,* 159 B.R. 323, 325 (Bankr.D. Idaho 1993).

It is undisputed that any recovery by FBN in the adversary procedure will benefit FBN's unsecured creditors; River Bank does not dispute that the claims asserted by creditors other than SFSA remain unsatisfied. The cases River Bank cites are therefore not directly applicable. River Bank asserts the cited cases suggest that section 550's "benefit of the estate" requirement is satisfied only if the entire sum recovered in a fraudulent conveyance action goes to unsecured creditors. This argument is meritless. Section 550 is designed to restore the bankrupt estate to the financial condition it would have enjoyed if the transfer had not occurred. *In re Classic Drywall, Inc.,* 127 B.R. 874, 876 (D.Kan.1991); *In re Brown,* 118 B.R. 57, 60 (Bankr.N.D.Tex.1990); *In re Blackburn,* 90 B.R. 569, 573 (Bankr.M.D.Ga.1987). This purpose is fulfilled by returning to the estate the full value of the property fraudulently transferred less the value of any valid liens against the property. *In re Baker,* 17 B.R. 392, 395 (Bankr.W.D.N.Y.1982). Because section 550(a) contemplates full recovery of a transfer so that the action will benefit at least one creditor, the amount of creditor claims does not limit the trustee's right of recovery in avoidance actions. *In re Acequia,* 34 F.3d 800, 811 (9th Cir.1994); *In re Harry Kaiser Associates,* 14 B.R. 107, 109 (Bankr.S.D.Fla.1981).

**\*4** River Bank also contends that permitting recovery in excess of creditor claims will contravene fundamental principles of tort law. First, River Bank asserts that recovery in excess of creditor claims will contravene the principle that tort damages should compensate only for the injury suffered. *See Dial v. O'Fallon,* 81 Ill.2d 548, 411 N.E.2d 217, 222 (1980). This argument is meritless. River Bank's liability under section 548 extends only to any sums fraudulently transferred from the estate and therefore does not create a windfall for the estate. Second, River Bank asserts that SFSA participated in and profited from the alleged fraud; River Bank contends that SFSA is therefore not entitled to damages. *See Cenco, Inc. v. Seidman & Seidman,* 686 F.2d 449, 454 (7th Cir.), *cert. denied,* 459 U.S. 880 (1982). However, because a fraudulent conveyance action seeks recovery on behalf of the estate, not the creditors, allowing challenges based upon the alleged inequity of particular claims would unduly complicate bankruptcy administration. *In re Enserv Co.,* 64 B.R. 519, 521 (Bankr. 9th Cir.1986), *aff'd,* 813 F.2d 1230 (9th Cir.1987); *In re Perdido Bay Country Club Estates, Inc.,* 23 B.R. 36, 42 (Bankr.S.D.Fla.1982).[FN3]

River Bank's liability to FBN is not altered by the number or amount of claims asserted against the FBN estate. River Bank therefore has no legally protected interest in the allowance or disallowance of the SFSA claim. Accordingly, the bankruptcy court correctly concluded that River Bank was not a party in interest with standing to challenge the SFSA claim.

*CONCLUSION*

The order of the bankruptcy court issued September 2, 1993 is affirmed.

> FN1. On December 6, 1994, the bankruptcy court entered a judgment against River Bank in the adversary proceeding. *See* Memorandum Opinion and Order, No. 92 A 961 (Bankr.N.D.Ill. Dec. 6, 1994). An appeal of this decision is pending before Judge Aspen.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                    Page 4
Not Reported in F.Supp., 1995 WL 230958 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp., 1995 WL 230958 (N.D.Ill.))**

FN2. River Bank also claims that it has an economic interest in the outcome of the SFSA claim because the disallowance of the SFSA claim will enhance the prospects for settlement of the adversary action. This assertion does not suggest any "legally protected interest" sufficient to render River Bank a party in interest.

FN3. River Bank asserts that even if it lacks standing to challenge the SFSA claim, this court should require the United States Trustee to investigate the trustee's improprieties it alleges; River Bank also notes Wendell Spears' suggestion that he did not object to the SFSA claim only because he lacked an economic incentive to do so. River Bank's attempt to have the court reach the merits of its contentions whether or not River Bank is a party in interest is meritless. The requirement of party in interest status is designed to prevent precisely such interference in the administration of a bankrupt estate by parties without a legally cognizable interest in the proceeding. *See In re Ionosphere Clubs,* 101 B.R. 844, 849 (Bankr.S.D.N.Y.1989).

N.D.Ill.,1995.
In re FBN Food Services, Inc.
Not Reported in F.Supp., 1995 WL 230958 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

82 Fed.Appx. 728                                                                                                    Page 1
82 Fed.Appx. 728, 2003 WL 22955865 (C.A.2 (N.Y.))
**(Cite as: 82 Fed.Appx. 728, 2003 WL 22955865 (C.A.2 (N.Y.)))**

◧Greenidge v. Allstate Ins. Co.
C.A.2 (N.Y.),2003.
This case was not selected for publication in the
Federal Reporter.
    United States Court of Appeals,Second Circuit.
 Gail GREENIDGE and Geary Greenidge, Plaintiffs,
   Taniya Seay, an infant by her mother and natural
  guardian, Denaki Seay, Applicant for Intervention-
                       Appellant,
                           v.
ALLSTATE INSURANCE CO. Defendant-Appellee.
                    **No. 03-7563.**

                   Dec. 11, 2003.

**Background:** Insureds brought state court action
against insurer for bad faith refusal to settle lawsuit
against them. After removal to federal court,
judgment creditor moved to intervene. The United
States District Court for the Southern District of New
York, Sidney H. Stein, J., denied motion, and
judgment creditor appealed.

**Holding:** The Court of Appeals held that district
court did not abuse its discretion in finding that
judgment creditor was not entitled to intervene.
Affirmed.

                  West Headnotes

**Federal Civil Procedure 170A ☞336**

170A Federal Civil Procedure
    170AII Parties
        170AII(H) Intervention
            170AII(H)2 Particular Intervenors
                170Ak336 k. Creditors. Most Cited
Cases
District court did not abuse its discretion in ruling
that insureds adequately represented judgment
creditor's interest, and thus that judgment creditor
was not entitled to intervene as of right in insureds'
action against insurer for bad faith refusal to settle
underlying lawsuit. Fed.Rules Civ.Proc.Rule 24, 28
U.S.C.A.

*729 Appeal from the United States District Court

for the Southern District of New York (Sidney H.
Stein, Judge).
UPON DUE CONSIDERATION, IT IS HEREBY
ORDERED, ADJUDGED AND DECREED that the
judgment of the district court be, and it hereby is,
AFFIRMED.
Howard Eison, Sanders, Sanders, Block & Woycik,
P.C., Mineola, NY, for Appellant.
Beth Shapiro, Shapiro, Beilly, Rosenberg,
Aronowitz, Levy & Fox, LLP (Barry I. Levy), New
York, NY, for Appellee, of counsel.

PRESENT:    CARDAMONE,    SACK,    and
GIBSON,FN* Circuit Judges.

        FN* Of the United States Court of Appeals
        for the Eighth Circuit, sitting by designation.

                  SUMMARY ORDER

**1 Taniya Seay, an infant injured by lead poisoning
as a result of ingesting paint chips and dust from an
apartment owned by Gail and Geary Greenidge and
insured by Allstate Insurance Company ("Allstate"),
brought an action against the Greenidges in New
York state court. After Allstate refused to settle, Seay
recovered a damages award substantially in excess of
the Greenidges' insurance coverage. The Greenidges
subsequently instituted a suit against Allstate in New
York state court for bad faith refusal to settle, and the
suit was removed to the District Court for the
Southern District of New York based on diversity of
citizenship. Before discovery began, Seay moved to
intervene as a plaintiff in the action in order to
protect her interest, as judgment creditor of the
Greenidges, in the outcome of the action. Seay
moved both for intervention as a matter of right,
Fed.R.Civ.P. 24(a)(2), and for permissive
intervention, Fed.R.Civ.P. 24(b)(2). The district court
denied Seay's motion in full.

A motion to intervene as of right pursuant to Rule
24(a)(2) must be granted if the applicant (1) timely
files an application, (2) shows an interest in the
action, (3) demonstrates that the interest may be
impaired, and (4) shows that the interest is not
adequately protected by the parties to the *730

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

82 Fed.Appx. 728
82 Fed.Appx. 728, 2003 WL 22955865 (C.A.2 (N.Y.))
**(Cite as: 82 Fed.Appx. 728, 2003 WL 22955865 (C.A.2 (N.Y.)))**

Page 2

action. *New York News, Inc. v. Kheel,* 972 F.2d 482, 485 (2d Cir.1992). Moreover, the "interest" asserted must be "direct," as opposed to "contingent." *Restor-A-Dent Dental Labs., Inc. v. Certified Alloy Prods., Inc.,* 725 F.2d 871, 874 (2d Cir.1984). If any one of these four elements is lacking, the application for intervention as of right may be denied. *In re Bank of New York Derivative Litig.,* 320 F.3d 291, 300 (2d Cir.2003). The district court based its decision to deny Seay's motion on its conclusions that prongs (2) and (4) of *Kheel'* s gloss of the rule were not met.

We review a district court's denial of a motion to intervene, whether as of right or by permission, for abuse of discretion. *In re Holocaust Victim Assets Litig.,* 225 F.3d 191, 197 (2d Cir.2000). Although we have some doubt about the correctness of the district court's conclusion that the appellant's interest in this case was contingent rather than direct, we conclude, upon a review of the record, that the district court did not abuse its considerable discretion in ruling that the Greenidges adequately represented Seay's interest in the litigation. This finding of adequate representation, standing alone, is sufficient to support the district court's denial of Seay's motion.

**\*\*2** In light of the standard of review for permissive intervention coupled with the non-mandatory language of Rule 24(b)(2), we also conclude that the district court did not abuse its discretion in ruling against the appellant's application for permissive intervention.

For the foregoing reasons, the judgment of the district court is hereby AFFIRMED.

C.A.2 (N.Y.),2003.
Greenidge v. Allstate Ins. Co.
82 Fed.Appx. 728, 2003 WL 22955865 (C.A.2 (N.Y.))

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

165 Fed.Appx. 878                                                          Page 1
165 Fed.Appx. 878, 2005 WL 3557254 (C.A.2 (N.Y.)), 45 Bankr.Ct.Dec. 221
**(Cite as: 165 Fed.Appx. 878, 2005 WL 3557254 (C.A.2 (N.Y.)))**

■Iridium India Telecom Ltd. v. Motorola, Inc.
C.A.2 (N.Y.),2005.
This case was not selected for publication in the
Federal Reporter.
United States Court of Appeals,Second Circuit.
IRIDIUM INDIA TELECOM LTD., Plaintiff-
Appellant,
v.
MOTOROLA, INC., Official Committee of
Unsecured Creditors of Iridium, Defendants-
Appellees.
No. 05-1965.

Dec. 28, 2005.

**Background:** Shareholder filed motion to intervene
in adversarial proceeding brought by creditors'
committee. The Bankruptcy Court, Cornelius
Blackshear, J., denied motion, and the United States
District Court for the Southern District of New York,
Laura Taylor Swain, J., 329 B.R. 403, affirmed.
Shareholder appealed.

**Holdings:** The Court of Appeals held that:
(1) shareholder's unconditional, statutory right to
intervene as party in interest in Chapter 11 case did
not exempt shareholder from requirement under
federal rule of civil procedure that application for
intervention be "timely," and
(2) shareholder's motion to intervene was not timely.

Affirmed.

West Headnotes

**[1] Bankruptcy 51 ⟶2160**

51 Bankruptcy
    51II Courts; Proceedings in General
        51II(B) Actions and Proceedings in General
            51k2159 Parties
                51k2160 k. Intervention. Most Cited
Cases
Shareholder's unconditional, statutory right as party
in interest in Chapter 11 case to intervene in
adversary proceeding initiated by creditors'
committee did not exempt shareholder from

requirement under federal rule of civil procedure that
application for intervention be "timely." 11 U.S.C.A.
§ 1109(b); Fed.Rules Civ.Proc.Rule 24(a), 28
U.S.C.A.

**[2] Bankruptcy 51 ⟶2160**

51 Bankruptcy
    51II Courts; Proceedings in General
        51II(B) Actions and Proceedings in General
            51k2159 Parties
                51k2160 k. Intervention. Most Cited
Cases
Timeliness of shareholder's application to intervene,
as party in interest in Chapter 11 case, in adversarial
proceeding instituted by creditors' committee was
properly measured from when shareholder was aware
or should have been aware of the adversarial
proceedings, or, at the latest, from the date that the
Court of Appeals issued decision in which a party in
interest's statutory right to intervene was first clearly
established. 11 U.S.C.A. § 1109(b); Fed.Rules
Civ.Proc.Rule 24(a), 28 U.S.C.A.

**[3] Bankruptcy 51 ⟶2160**

51 Bankruptcy
    51II Courts; Proceedings in General
        51II(B) Actions and Proceedings in General
            51k2159 Parties
                51k2160 k. Intervention. Most Cited
Cases
Shareholder's motion to intervene, as party in interest
in Chapter 11 case, in adversarial proceeding
instituted by creditors' committee was unreasonably
late under federal rule of civil procedure requiring
that application for intervention be "timely," where
shareholder was aware or should have been aware of
the adversarial proceeding when it was instituted, but
shareholder did not file motion to intervene until over
two years after adversarial proceeding was initiated,
and over one year after Court of Appeals issued
decision in which a party in interest's statutory right
to intervene was first clearly established. 11 U.S.C.A.
§ 1109(b); Fed.Rules Civ.Proc.Rule 24(a), 28
U.S.C.A.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

165 Fed.Appx. 878                                                                    Page 2
165 Fed.Appx. 878, 2005 WL 3557254 (C.A.2 (N.Y.)), 45 Bankr.Ct.Dec. 221
**(Cite as: 165 Fed.Appx. 878, 2005 WL 3557254 (C.A.2 (N.Y.)))**

[4] **Federal Civil Procedure 170A** 🔑1271.5

170A Federal Civil Procedure
   170AX Depositions and Discovery
      170AX(A) In General
         170Ak1271.5 k. Protective Orders. Most
Cited Cases
Rule that a protective order should not be modified
absent showing of improvidence in grant of order or
some extraordinary circumstance or compelling need
was not limited to cases where the government
sought to modify a protective order; rather, rule
applied even when the third party seeking access to
discovery material was a private litigant.

**\*879** Appeal from a judgment of the United States
District Court for the Southern District of New York
(Laura Taylor Swain, Judge).
Richard B. Herman, Richard Herman, LLC (Rohit
Sabharwal, Sabharwal & Associates), New York,
NY, for Appellants, of counsel.
Nader R. Boulos, Kirkland & Ellis LLP (Frank
Holozubiec, Garret B. Johnson, Amy E. Crawford,
Kirkland & Ellis LLP), New York, N.Y. for
Defendant-Appellee Motorola, Inc., of counsel.
Dianne Harvey, Weil, Gotshal & Manges LLP, New
York, N.Y. for Defendant-Appellee Official
Committee of Unsecured Creditors of Iridium.

PRESENT: Hon. RICHARD J. CARDAMONE,
Hon. PIERRE N. LEVAL, and Hon. ROBERT D.
SACK, Circuit Judges.

### SUMMARY ORDER

**\*\*1** UPON DUE CONSIDERATION it is hereby
ORDERED, ADJUDGED AND DECREED that the
judgment be, and it hereby is, AFFIRMED.

Iridium India appeals from the district court's
judgment affirming the bankruptcy judge's denial of
Iridium India's motion to intervene in a bankruptcy
adversarial proceeding instituted by the Official
Committee of Unsecured Creditors of Iridium against
Motorola, Inc.

[1]*Motion to Intervene.* Iridium India argues that 11
U.S.C. § 1109(b), as interpreted by our decision in *In
re Caldor,* 303 F.3d 161 (2d Cir.2002), endows it
with an unconditional right to intervene, and that its

unconditional right cannot be limited by Federal Rule
of Civil Procedure 24(a)'s requirement that
applications to intervene be "timely." We disagree.

We decided in *Caldor* that " § 1109(b) confers on a
party in interest an unconditional right to intervene in
an adversary proceeding within the meaning of FRCP
24(a)(1)." *Id.* at 166. Federal Rule of Civil Procedure
24(a) states:

   *Upon timely application* anyone shall be permitted
   to intervene in an action: (1) when a statute of the
   United States confers an unconditional right to
   intervene; or (2) when the applicant claims an
   interest relating to the property or transaction
   which is the subject of the action and the applicant
   is so situated that the disposition of the action may
   as a practical matter impair or impede the
   applicant's ability to protect that interest, unless the
   applicant's interest is adequately represented by
   existing parties.

*Id.* (emphasis added).

Our decision in *Caldor* thus established that a party
in interest under 11 U.S.C. § 1109(b) has an
unconditional right to intervene in an adversary
proceeding under 24(a)(1) and need not make a
separate showing under 24(a)(2). But Rule 24(a) by
its own terms requires that, even if an applicant has
an "unconditional right" to intervene, the application
must still be **\*880** "timely." There is no support for
Iridium India's argument that *Caldor* exempts
bankruptcy intervenors from Rule 24's timeliness
requirement.

[2] Iridium India argues in the alternative that
timeliness should be measured from the time of the
Indian court's decision blocking access to the parties'
discovery documents. The appellees argue that
timeliness should be judged from the start of the
adversary proceedings. We agree with the appellees
that timeliness should be measured from the start of
the proceedings-specifically, when an applicant was
aware or should have been aware of the adversarial
proceedings, *see*Sumitomo Metal Indus., Ltd. v.
Babcock & Wilcox Co., 69 C.C.P.A. 75, 669 F.2d
703, 707-08 (1982)-or, at the latest, from the date we
issued our decision in *Caldor,* which first clearly
established that Iridium India had a statutory right to
intervene, *cf.*Ruiz v. Estelle, 161 F.3d 814, 828 (5th

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

165 Fed.Appx. 878
165 Fed.Appx. 878, 2005 WL 3557254 (C.A.2 (N.Y.)), 45 Bankr.Ct.Dec. 221
**(Cite as: 165 Fed.Appx. 878, 2005 WL 3557254 (C.A.2 (N.Y.)))**

Page 3

Cir.1998), *cert. denied,*526 U.S. 1158, 119 S.Ct. 2046, 144 L.Ed.2d 213 (1999) (holding that timeliness in 24(a)(1) intervention should be judged from the effective date of the statute that gave movants an unconditional right to intervene).

**\*\*2**[3] "Among the most important factors in a timeliness decision is the length of time the applicant knew or should have known of his interest...." *Catanzano v. Wing,* 103 F.3d 223, 232 (2d Cir.1996); *see also*Sumitomo Metal Indus., 669 F.2d at 708. Here, Iridium India was aware or should have been aware of the adversarial proceeding when it was instituted. Judging timeliness either from the beginning of the proceedings in July 2001-or from our decision in *Caldor* in September 2002-the district court did not abuse its discretion in concluding that Iridium India's motion to intervene in May 2004 was unreasonably late.

*Modification of the Protective Order.* The bankruptcy court determined-and the district court affirmed the determination-that Iridium India had not shown a compelling need or extraordinary circumstances necessary to modify the protective order. In reaching this conclusion, the bankruptcy court applied our holding in *Martindell v. International Telephone & Telegraph Corp.,* 594 F.2d 291 (2d Cir.1979), in which we decided that "absent a showing of improvidence in the grant of a Rule 26(c) protective order or some extraordinary circumstance or compelling need ... a witness should be entitled to rely upon the enforceability of a protective order against any third parties." *Id.* at 296.

[4] Iridium India argues that the *Martindell* standard should be limited to cases where the government seeks to modify a protective order. It is true that *Martindell* emphasized that "the Government as investigator has awesome powers which render unnecessary its exploitation of the fruits of private litigation." *Id.* at 296 (internal quotation marks omitted). Nevertheless, we have specifically rejected Iridium India's argument and applied *Martindell* even when the third party seeking access to discovery material is a private litigant. *See*SEC v. TheStreet.Com, 273 F.3d 222, 229 n. 7 (2d Cir.2001).

We have articulated some exceptions to *Martindell*'s "strong presumption against access," none of which applies here. First, under *Martindell* itself, a protective order can be modified if it was improvidently granted. *Martindell,* 594 F.2d at 296;*see also*In re Agent Orange, 821 F.2d 139, 148 (2d Cir.), *cert. denied sub nom.*Dow Chem. Co. v. Ryan, 484 U.S. 953, 108 S.Ct. 344, 98 L.Ed.2d 370 (1987). Relying on *Agent Orange,* Iridium India argues that the original Rule 26(c) protective order was improvidently granted because the parties cannot "demonstrate good cause for shielding any document from public view." *Id.* at 147. But we have previously **\*881** noted that the cited portion of *Agent Orange* has been overruled by statute. *See*TheStreet.Com, 273 F.3d at 233 n. 11. "Without an ability to restrict public dissemination of certain discovery materials that are never introduced at trial, litigants would be subject to needless annoyance, embarrassment, oppression, or undue burden or expense." *Id.* at 229.

**\*\*3** A second exception to *Martindell*'s presumption exists for "judicial documents." In our decision in *United States v. Amodeo,* 44 F.3d 141, 145-46 (2d Cir.1995), we recognized that the public has a common law presumptive right of access to judicial documents. But because the documents Iridium India seeks have been exchanged solely between the parties, that decision is inapplicable. "Documents that play no role in the performance of Article III functions, such as those passed between the parties in discovery, lie entirely beyond the presumption's reach...." *United States v. Amodeo,* 71 F.3d 1044, 1050 (2d Cir.1995).

Third, *Martindell* does not apply when "protective orders that are on their face temporary or limited [do] not justify reliance by the parties." *Gambale v. Deutsche Bank AG,* 377 F.3d 133, 142 n. 7 (2d Cir.2004) (internal quotation marks omitted). Iridium India does not-and cannot-argue that the initial protective order in this case was similarly limited in scope.

Because Iridium India's claim meets none of the *Martindell* exceptions, neither the bankruptcy court nor the district court abused its discretion in declining to amend the protective order.

For the reasons set forth above, the judgment of the district court is hereby AFFIRMED.

C.A.2 (N.Y.),2005.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

165 Fed.Appx. 878                                                                      Page 4
165 Fed.Appx. 878, 2005 WL 3557254 (C.A.2 (N.Y.)), 45 Bankr.Ct.Dec. 221
**(Cite as: 165 Fed.Appx. 878, 2005 WL 3557254 (C.A.2 (N.Y.)))**


Iridium India Telecom Ltd. v. Motorola, Inc.
165 Fed.Appx. 878, 2005 WL 3557254 (C.A.2
(N.Y.)), 45 Bankr.Ct.Dec. 221

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

155 Fed.Appx. 21                                                                                    Page 1
155 Fed.Appx. 21, 2005 WL 2982156 (C.A.2 (N.Y.))
**(Cite as: 155 Fed.Appx. 21, 2005 WL 2982156 (C.A.2 (N.Y.)))**

CKunz v. New York State Commission on Judicial
Misconduct
C.A.2 (N.Y.),2005.
This case was not selected for publication in the
Federal Reporter.
United States Court of Appeals,Second Circuit.
David F. KUNZ, Plaintiff-Appellee,
v.
NEW YORK STATE COMMISSION ON
JUDICIAL MISCONDUCT, Robert Tembeckjian,
individually and as Administrator and Counsel of the
New York State Commission on Judicial Conduct,
New York State Office of Court Administration, and
Judge Jan H. Plumadore, individually and as Deputy
Chief Administrator of the New York State Office of
Court Administration, Defendants-Appellees,
H. William Van Allen and Christopher Earl Strunk,
Intervenors-Defendants-Appellants.
**No. 05-1566-CV.**

Nov. 8, 2005.

**Background:** In action against New York State
Commission on Judicial Conduct and New York
State Office of Court Administration (OCA), the
United States District Court for the Northern District
of New York denied motion to intervene and
dismissed the action. Intervenors appealed.

**Holding:** The Court of Appeals held that motion to
intervene was rendered moot by dismissal.
Affirmed.

West Headnotes

**Federal Courts 170B ⬅13**

170B Federal Courts
    170BI Jurisdiction and Powers in General
        170BI(A) In General
            170Bk12 Case or Controversy Requirement
                170Bk13 k. Particular Cases or
Questions, Justiciable Controversy. Most Cited Cases
Motion to intervene in action against New York State
Commission on Judicial Conduct and New York
State Office of Court Administration (OCA) was
rendered moot by dismissal of action.

**\*21** Appeal from the United States District Court for
the Northern District of New York.
UPON DUE CONSIDERATION, IT IS HEREBY
ORDERED that the judgment of the district court be
and hereby is AFFIRMED.
George J. Szary, DeGraff, Foy, Kunz & Devine,
LLP, Albany, New York, for Plaintiff-Appellee.
Edward Lindner (Eliot Spitzer, Attorney General of
the State of New York, and Peter H. Schiff, Senior
Counsel, on the brief), New York, New York, for
Defendants-Appellees.
**\*22** H. William Van Allen, Hurley, New York and
Christopher Earl Strunk, Brooklyn, New York, for
Intervenors-Defendants-Appellants, pro se.

PRESENT: WALKER, Chief Judge, FEINBERG,
and CARDAMONE, Circuit Judges.

SUMMARY ORDER

**\*\*1** Intervenors-defendants-appellants H. William
Van Allen and Christopher Earl Strunk appeal from
orders of February 15, 2005, March 21, 2005, and
March 24, 2005, entered in the United States District
Court for the Northern District of New York
(Lawrence E. Kahn, *Judge* ) disposing of a suit
between David F. Kunz, the New York State
Commission on Judicial Conduct ("the
Commission"), and the New York State Office of
Court Administration ("OCA"), and denying as moot
intervenors-defendants-appellants' motion to
intervene in those proceedings. We assume
familiarity with the facts and procedural history, and
we affirm the district court's orders.

This court reviews a district court's denial of a motion
to intervene for abuse of discretion. *SeeFarmland
Dairies v. Comm'r of N.Y. State Dep't of Agric. &
Mkts.,* 847 F.2d 1038, 1043-44 (2d Cir.1988). In
order to intervene in a case, an intervenor must have
a "direct, substantial, and legally protectable" interest
in the litigation. *United States v. Peoples Benefit Life
Ins. Co.,* 271 F.3d 411, 415 (2d Cir.2001) (citing
*Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale
Elec. Co.,* 922 F.2d 92, 97 (2d Cir.1990)). Van Allen
and Strunk seem to assert a general interest in the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

155 Fed.Appx. 21
155 Fed.Appx. 21, 2005 WL 2982156 (C.A.2 (N.Y.))
**(Cite as: 155 Fed.Appx. 21, 2005 WL 2982156 (C.A.2 (N.Y.)))**

Page 2

efficient regulation of judicial conduct by the Commission, but they fail to identify any direct interest in Kunz's dispute with the Commission and the OCA. Moreover, where the action in which a litigant seeks to intervene has been discontinued, the motion to intervene is rendered moot. *United States v. Ford,* 650 F.2d 1141, 1142-43 (9th Cir.1981); *see also Ruby v. Pan Am. World Airways, Inc.,* 360 F.2d 691, 691 (2d Cir.1966) (stating that an appeal from denial of preliminary injunction becomes moot when the complaint is dismissed); *Nat'l Bulk Carriers, Inc. v. Princess Mgmt.,* 597 F.2d 819, 825 n. 13 (2d Cir.1979) (pointing out that intervention in an action that is terminated could not provide any additional protection to putative intervenors and denying motion to intervene as moot). The appeal from the order denying appellants' motion to intervene as moot therefore must fail.

It is well-settled law that only proper parties of record may appeal adverse judgments. *Farmland Dairies,* 847 F.2d at 1043. Because appellants were not permitted to intervene in the proceedings involving Kunz, the Commission, and the OCA, appellants lack standing to appeal the orders disposing of that dispute.

We have carefully considered appellants' remaining arguments and find them to be without merit.

For the reasons set forth above, the decision of the United States District Court for the Northern District of New York is hereby AFFIRMED.

C.A.2 (N.Y.),2005.
Kunz v. New York State Commission on Judicial Misconduct
155 Fed.Appx. 21, 2005 WL 2982156 (C.A.2 (N.Y.))

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.                                                                                           Page 1
Not Reported in F.Supp., 1996 WL 403087 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp., 1996 WL 403087 (S.D.N.Y.))**

CIn re Stephenson
S.D.N.Y.,1996.
Only the Westlaw citation is currently available.
     United States District Court, S.D. New York.
          In re Roger M. STEPHENSON, Debtor.
Ian J. GAZES, as Trustee of the Estate of Roger M.
          Stephenson, Plaintiff-Appellee,
                         v.
Roger M. STEPHENSON, Defendant-Appellant.
      **Nos. 96 CIV. B. 557 (DC), 96 CIV. 558 (DC).**

                  July 18, 1996.

Ian J. Gazes, Greg M. Zipes, New York City, for
Plaintiff-Appellee.
Jerome T. Dorfman, Woodbury, New York, for
Defendant-Appellant.

          *MEMORANDUM DECISION and ORDER*

CHIN, District Judge.
**\*1** Defendant-appellant Roger M. Stephenson
("Appellant") appeals from an order of the
Bankruptcy Court for the Southern District of New
York that imposed a sanction of $500.00 on
Appellant and Appellant's counsel for failure to
cooperate in providing discovery. For the reasons set
forth below, the bankruptcy court's order is affirmed.

As a threshold matter, Appellant has utterly failed to
comply with Bankruptcy Rule 8010, which provides
that an appellate brief shall contain, *inter alia,* a table
of contents, a statement of the basis of appellate
jurisdiction, a statement of issues presented, the
applicable standard of appellate review, and a
statement of the case. Bankruptcy Rule 8010(a)(1)(A-
D). Appellant's brief fails to contain any of these
sections. Such a failure is grounds for dismissing a
bankruptcy appeal. *See, e.g., In re Gulph Woods
Corp., 189 B.R. 320, 323 (E.D.Penn.1995); In re
Stotler and Co., 166 B.R. 114, 116-17 (N.D.Ill.1994);
A. Marcus, Inc. v. Farrow, 94 B.R. 513, 515
(N.D.Ill.1989); see also In re Marquam Inv. Corp.,
942 F.2d 1462, 1467 (9th Cir.1991)* (failure to
comply with Rule 8010 waives issue on appeal).

I need not dismiss Appellant's appeal on this

procedural ground, however, because his appeal is
without merit. Bankruptcy Judge Conrad found that
Appellant had failed to comply with his discovery
obligations and thus imposed sanctions of $500, as he
was entitled to do under § 105 of the Bankruptcy
Code. I do not find that Judge Conrad abused his
discretion in imposing sanctions, nor do I find that
any of the factual findings underlying the imposition
of sanctions were clearly erroneous. Indeed, in this
instance it would be particularly absurd for me to
hold that Judge Conrad's factual findings were clearly
erroneous because Appellant has failed to include any
citations to the Record on Appeal in his brief.
Accordingly, Judge Conrad's order is affirmed.

Appellee has asked for me to impose sanctions
pursuant to Rule 11 on Appellant. After reviewing
the record, I decline to impose such sanctions.

Finally, Appellant has failed to perfect a third appeal
he filed in this case, *Gazes v. Stephenson,* 96 Civ.
557 (DC). Hence, that appeal is hereby dismissed.

SO ORDERED.

S.D.N.Y.,1996.
In re Stephenson
Not Reported in F.Supp., 1996 WL 403087
(S.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.